PENNSYLVANIA LUMBERMENS INSURANCE
CORPORATION et al., Appellants,

v.

LANDMARK ELECTRIC, INC., Appellee, et al.*

[Cite as *Pennsylvania Lumbermens Ins. Corp. v. Landmark
Elec., Inc.* (1996), 110 Ohio App.3d 732.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15199.

Decided May 3, 1996.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was dismissed by joint application of the parties in (1996), 76 Ohio St.3d 1467, 669 N.E.2d 851.

Gary R. Chopp and Jeffrey R. Learned, for appellants.

Freund, Freeze & Arnold and Steven V. Freeze, for appellee.

FAIN; Judge.

Plaintiffs-appellants Pennsylvania Lumbermens Insurance Corporation and American States Insurance Company ("plaintiffs") appeal from a summary judgment rendered in favor of defendant-appellee Landmark Electric, Inc. In its decision, the trial court first granted Landmark's motion in limine to exclude the deposition testimony of Marc Rubin, plaintiffs' fire expert, and granted Landmark's motion to strike Rubin's affidavit that plaintiffs had attached to their memorandum in opposition to the motion for summary judgment. Finally, the trial court rendered summary judgment in favor of Landmark, reasoning that plaintiffs had not shown specific facts that Landmark was negligent or that its electrical work proximately caused the fire.

Because we find that Rubin is competent to give his opinion regarding the cause of the fire and that his testimony should be admissible once plaintiffs properly lay the predicate facts, we conclude that the trial court abused its discretion in excluding Rubin's deposition testimony. Based on Rubin's testimo-

ny and other evidence in this cause, we conclude that the trial court committed reversible error because Landmark failed, as the movant for summary judgment, to meet its burden of showing the lack of genuine issues of material fact for trial. Thus, the burden did not shift to plaintiffs to show the existence of a genuine issue of material fact. Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings in keeping with this opinion. Finally, we conclude that the trial court erred in granting Landmark's motion to strike because the motion was not ripe for determination.

## I

On October 3, 1987, a fire destroyed DeClark's Card and Gift Shop in the Town and Country Shopping Center in Kettering, Ohio. Harold Park, a fire origin expert, located the origin of the fire in the space between the roof of the building and a drop ceiling between the third and fourth I-beams of the structure. Park concluded that "[t]he cause of the fire was an electrical malfunction which ignited wood or other combustibles in the space between the ceiling and the roof." The fire spread throughout this space in all directions.

The investigation report from the Kettering Fire Department dated November 10, 1987, indicated that electrical wiring in this concealed space suffered extensive fire damage. Immediately above the fourth I-beam was a rooftop heating/ventilation/air conditioning ("HVAC") unit that fell when the roof collapsed during the fire. The report indicated that "[t]he furnace blower motor had received extensive damage inside due to heat damage * * * [which] is unusual * * * unless there is an internal short." The heating component of the HVAC unit was activated for the first time since the remodeling project on October 2, 1987, the night before the fire.

Photographs taken after the fire show old wiring, BX cable, in the wreckage and show BX cable connected to the recently installed EMT conduit and to a junction box. The report also indicated that BX cable was thought to be deactivated, but was apparently still energized:

"In a later interview with the company that had installed the overhead rolling front gate stated [sic] that they got shocked from some of the so called wiring that was located in the combustible concealed space [origin of fire]. This would indicated [sic] that some of the wiring in this area was not deactivated and was energized at the time of the fire."

Pennsylvania Lumbermens Insurance Corporation, American States Insurance Company, Schottenstein Stores Corporation, and the Union Joint Venture filed several suits, which were consolidated, against Landmark Electric, Inc. and Howard Electric Company, alleging that negligent electrical work during a

remodeling project at DeClark's several months earlier had caused the fire. Job specifications for the remodeling project indicated that electrical contractors were to remove the old wiring, BX cable, and to replace it with EMT conduit. BX cable is spiral armored cable once used for electrical wiring; EMT conduit is smooth rigid metal tubing for electrical wiring. Howard later settled and is no longer a party in this cause.

In October 1992, the trial court granted Landmark's motion *in limine* to exclude the testimony of Marc Rubin and Billy Sadler, fire cause experts for plaintiffs, on the grounds that they were not licensed private investigators under R.C. 4749.01. The trial court granted Landmark's motion for summary judgment in January 1993, after plaintiffs filed a stipulation that the trial court's ruling to exclude their experts' testimony prevented them from proving a prima facie case against Landmark.

In the first appeal to this court, we concluded that the trial court properly excluded Sadler's testimony but abused its discretion in excluding Rubin's testimony, since he was not engaged in the business of private investigation, stating: "Rubin did not conduct a personal investigation of the fire scene; rather, he relied solely upon the reports and observations of others to form his opinion as to the cause of the fire." *Pennsylvania Lumbermens Ins. Corp. v. Landmark Elec., Inc.* (Dec. 29, 1993), Montgomery App. No. 13882, unreported, 1993 WL 541644.

On remand, plaintiffs filed an amended demand for judgment. Landmark filed a combined motion *in limine* seeking the exclusion of Rubin's deposition testimony and seeking summary judgment, arguing that plaintiffs had insufficient proof that energized BX cable was the cause or proximate cause of the fire. Landmark argued that Rubin's deposition testimony should be excluded because Rubin lacked personal knowledge of the investigation and because his opinions were based on hearsay.

In response to the combined motion *in limine* and for summary judgment, plaintiffs attached an affidavit from Rubin, against which Landmark filed a motion to strike. The trial court granted Landmark's motions *in limine* and to strike, holding that (1) Rubin's deposition and affidavit were not based on his personal knowledge, and thus he was not competent to testify; (2) he did not express his opinions in terms of probability as required under *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus; and (3) his opinion was not sufficiently specific under *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 523 N.E.2d 489, since he could not identify the actual wire that caused the fire.

Specifically, the trial court reasoned that "[s]ince Rule 703 of the Ohio Rules of Evidence require[s] that the factual data upon which an expert bases his opinion or inferences may be those perceived by him or those admitted in evidence at the

hearing, it is clear that what Mr. Rubin is testifying to is not actually perceived by him and there has been no hearing at this point wherein these facts could be put into evidence." The trial court also granted Landmark's motion for summary judgment.

Plaintiffs appeal from the decisions of the trial court.

## II

Plaintiffs' first assignment of error is as follows:

"The trial court reversibly erred when it granted defendant's motion *in limine* and excluded the testimony of Marc Rubin, plaintiffs' fire cause expert."

Because whether Landmark met its burden on summary judgment depends in part upon the competency and admissibility of Rubin's testimony, we will first examine the trial court's exclusion of Rubin's testimony. Plaintiffs argue that the trial court abused its discretion in excluding Rubin's deposition testimony based on its reasoning that Rubin's testimony was (1) inadmissible and incompetent under Evid.R. 703; (2) improperly expressed in terms of probability under *Stinson v. England,* 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus; and (3) not specific enough under *State Farm Fire & Cas. Co. v. Chrysler Corp.,* 37 Ohio St.3d 1, 523 N.E.2d 489.

Because Rubin's testimony was being offered in opposition to Landmark's motion for summary judgment, we conclude that Civ.R. 56(C) and (E) determine the standard against which his evidence must be tested for admissibility, and we are satisfied that it meets that standard. Furthermore, we conclude that Rubin's testimony meets the test set forth in *Stinson* and that *Chrysler* is distinguishable from this case. Thus, because the trial court's exclusion of Rubin's testimony is not supported by a sound reasoning process, *AAAA Ent., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601, we conclude that the trial court abused its discretion in excluding Rubin's deposition testimony.

Before addressing Landmark's claim that Rubin is not competent to testify to establish causation, we note that Landmark has not challenged his qualifications as an electrical fire cause expert, but has limited its challenge to his lack of personal knowledge of the fire investigation, the claim that his testimony is improperly expressed as to probabilities, and the claim that it is too imprecise because he cannot identify the specific wire that caused the fire. Had plaintiffs offered Rubin as a fact witness, we would agree that his lack of personal knowledge precludes him from testifying. Since plaintiffs are offering Rubin as an expert to opine that energized BX cable ignited combustibles causing the fire,

based on facts offered by other witnesses, he is competent to testify and his testimony should be admissible for the purposes of summary judgment.

We also note that our record in this appeal begins with an amended demand for judgment based on the complaint filed in civil case No. 91–2867. Thus, the record before us does not include much of the evidence that was before the trial court in the earlier litigation in this case. The parties refer to depositions, reports, and other evidence that have not been included in the record in this particular appeal. Based on the evidence in the record in this appeal, we conclude that Rubin is competent to testify to his opinion and that his opinion is admissible evidence when supported by predicate facts.

■ In its arguments concerning Rubin's competence and the admissibility of his testimony to the trial court and to this court, Landmark argues that Evid.R. 703 is applicable. Evid.R. 703 reads: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him *or admitted in evidence at the hearing.*" (Emphasis added.) In interpreting this Rule of Evidence, the Supreme Court has written: "It is important to note that Evid.R. 703 is written in the disjunctive. Opinions may be based on perceptions *or* facts or data admitted in evidence." (Emphasis *sic.*) *State v. Solomon* (1991), 59 Ohio St.3d 124, 126, 570 N.E.2d 1118, 1120. As long as evidence admissible at trial is introduced and admitted through fact witnesses with personal knowledge, an expert witness without personal knowledge of the underlying event is permitted to testify to an opinion based on admitted facts. In other words, experts may opine based upon predicate facts otherwise admissible in evidence under Evid.R. 703.

When considering a motion for summary judgment, however, a trial court must first look to Evid.R. 101(C), which lists exceptions to the applicability of the Rules of Evidence. Evid.R. 101(C)(6) states that one exception includes "[p]roceedings in which other rules prescribed by the supreme court govern matters relating to evidence." Motions under Civ.R. 56 are proceedings with other evidentiary rules prescribed by the Supreme Court. Civ.R. 56(C) states: "No evidence or stipulation may be considered except as stated in this rule." Thus, Civ.R. 56 has a separate evidentiary standard to determine admissibility and competence of evidence in summary judgment proceedings.

Civ.R. 56(E) specifies the types of evidence a party may use to support or oppose summary judgment and states:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith[.]"

■ A party may attach authenticated evidence or affidavits attesting facts otherwise admissible under Civ.R. 56 to support its argument in favor of or against summary judgment. Additionally, a party may attach affidavits setting out experts' opinions as long as the predicate facts on which the opinions are based have been separately attested to or authenticated and are also attached to the motion for or memorandum in opposition to summary judgment. Thus, we conclude that Rubin is competent to testify to his opinion about the cause of the fire as long as his opinion is based on predicate facts separately admissible under Civ.R. 56(E) and that his opinion would be admissible in response to a motion for summary judgment when properly supplemented with appropriate predicate facts.

■ Of course, when the opinion of an expert is submitted in opposition to a motion for summary judgment, and it is predicated upon facts not lying within the expert's personal knowledge, but upon facts concerning which others must testify, the opinion is but one link in a chain of evidence, and the trial court must determine whether the entire chain creates a genuine issue of fact. An expert giving an opinion not based upon his personal knowledge is in effect giving hypothetical testimony—"If A, B, and C are true, then, based upon my expertise in the area of fire causation, the defendant's act proximately caused the fire." A genuine issue of material fact concerning proximate cause is only created by this kind of opinion testimony if the plaintiff presents some independent evidence of A, B, and C.

Situations involving chains of evidence, not all of which lie within the personal knowledge of any one witness, are not unique to the field of expert testimony. In an automobile collision case, one witness who actually saw the collision may give a description of an automobile that caused the accident by going left of the centerline, without being able to identify its driver, and another witness, who saw an automobile moments before the collision, may positively identify the defendant as the driver. The testimony of neither witness, by itself, would be sufficient to create a genuine issue of material fact, but the testimony of both witnesses, considered together, would suffice. In the case of an expert witness who has no personal knowledge of the facts upon which his opinion is based, a common situation, it is the expert's expertise in a particular field, combined with the factual testimony of other witnesses, that is used to create a genuine issue of material fact.

With respect to the trial court's other reasons for excluding Rubin's deposition testimony, the trial court, again relying on Evid.R. 703, reasoned that because no

hearing had been held in the case in which evidence could be admitted, Rubin's opinion must be excluded. A hearing on a motion for summary judgment is a hearing on paper. It would be absurd to hold that even though a plaintiff will be able to create a genuine issue of material fact at trial, he can never survive a motion for summary judgment to get to trial because the expert upon whose opinion he is relying does not have personal knowledge of the facts upon which his opinion is based and there will be no "hearing" at which those facts can be established. In determining whether evidence is admissible for purposes of deciding a motion for summary judgment, a trial court must look to Civ.R. 56, which prescribes evidentiary standards for summary judgment.

In addition, we also disagree with the trial court's finding that Rubin's testimony was improperly expressed in terms of probability under *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus. The holding in *Stinson* states: "The admissibility of expert testimony that an event is the proximate cause is contingent upon the expression of an opinion by the expert with respect to the causative event in terms of probability. An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue." (Citations omitted.) *Id.*

The parties before us have identified only two possible causes of the fire: (1) the HVAC unit; or (2) energized BX cable igniting combustibles. No other possible cause for the fire has been offered by anyone. Based upon our review of Rubin's deposition in its entirety, we find that Rubin testified that it was his opinion, as a electrical fire cause expert, that energized BX cable ignited combustibles to cause the fire. Even when asked whether it is impossible to have an arced wire without BX cable being energized, Rubin responded in terms of probability: "It's highly improbable that it could be [highly improbable for BX cable that is not energized to arc]."

Although Rubin pondered this unlikely scenario, he concluded his response to this question with: "No, I don't believe you could have arcing from another source. * * * The BX has to be energized to have that arcing on [the BX cable]." In his affidavit, which was also considered and stricken by the trial court, Rubin "ruled out any other possible cause for the fire, including the roof top HVAC unit." Rubin based his opinion on photographs of the unit and the investigation report from the local fire department that fought the fire.

Given the nature of Rubin's testimony and his attested statements, we find that Rubin met the standard in *Stinson* to express his opinion in terms of probability; Rubin opined that the HVAC unit did not cause the fire and that, in his opinion, energized BX cable igniting combustibles was the probable cause. Given that Rubin ruled out the HVAC unit, we would translate this into a probability of zero percent, meaning that the probability that BX cable caused the fire, in Rubin's

opinion, is much higher than fifty percent. We see no reason to require an expert to resort to incantations or magic words when the meaning of his or her testimony is clear.

Finally, with respect to whether Rubin's testimony was sufficiently specific, we disagree with the trial court that *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 523 N.E.2d 489, would require Rubin to testify with greater specificity. Although the trial court did not give us the benefit of its analysis to support its reasoning, we infer that the trial court agreed with Landmark's argument that because Rubin cannot identify the specific BX cable that caused the fire, Rubin's testimony must be excluded. As we will set forth in greater detail in the next section, we do not agree that the reasoning in *Chrysler* would require an expert to specify which exact cable caused a fire. Instead, *Chrysler* requires a plaintiff to present evidence of a causal link between the actions or omissions of a defendant and the injury suffered. We find that the record in this cause contains genuine issues of material fact on causation for trial.

We conclude that the trial court abused its discretion in excluding Rubin's deposition testimony. Plaintiffs' first assignment of error is sustained.

### III

Plaintiffs' second assignment of error is as follows:

"The trial court reversibly erred when it granted defendant's motion for summary judgment on the basis that plaintiffs had allegedly failed to present evidence establishing negligence or proximate cause."

Plaintiffs contend that, had the trial court considered Rubin's deposition testimony and affidavit when determining the motion for summary judgment, plaintiffs could have established that Landmark's breach of duty proximately caused the fire. Landmark has not disputed that it had a duty to plaintiffs. Given that our review on summary judgment is *de novo*, however, we must first consider whether Landmark has met its burden on summary judgment to show that no genuine issues of material fact exist for trial.

Under Civ.R. 56(C), a party moving for summary judgment bears the initial burden to prove that no genuine issues of material fact exist for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 800–801, citing *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273–274; *AAAA Ent.*, 50 Ohio St.3d 157, 553 N.E.2d 597, paragraph two of the syllabus. In *Dresher*, the Supreme Court quoted extensively from *Mitseff* to explain the duty of the movant:

" 'Accordingly, even *Celotex* makes clear that a party moving for summary judgment has certain obligations that must be met. * * * [T]he party seeking summary judgment "bears the burden of affirmatively demonstrating that, with respect to every essential issue of each count in the complaint, there is no genuine issue of fact." * * * The moving party bears this burden " * * * even with regard to issues on which plaintiffs * * * would have the burden of proof should the case go to trial." ' " *Dresher* at 294, 662 N.E.2d at 274, quoting *Mitseff* at 115, 526 N.E.2d at 801, quoting *Massaro v. Vernitron Corp.* (D.Mass. 1983), 559 F.Supp. 1068, 1073.

A movant must meet its burden before the burden is shifted to the nonmovant to set forth specific facts showing that genuine issues of material fact exist for trial. *Dresher* at 293, 662 N.E.2d at 273–274. To meet its burden, a movant must show either (1) a "complete failure of proof concerning an essential element" of the nonmovant's case, or (2) insufficient proof of an essential element. *Celotex* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273–274; *Mitseff* at 115, 526 N.E.2d at 801.

■■ We note that our reasoning is in accord with the analysis and holding in *Dresher.* The Supreme Court in *Dresher* limited the broad language in the third paragraph of the syllabus in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095 ("A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial") to be in conformity with *Mitseff* and *Celotex.*[1] Therefore, unless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant summary judgment.

In its motion for summary judgment, Landmark contended that plaintiffs' evidence of causation is insufficient and, thus, speculative; Landmark did not contend that there was a complete lack of evidence on causation. Landmark argued to the trial court that it was entitled to summary judgment as a matter of

---

1. It should be noted that the nonmovant has no burden of coming forward with evidence with respect to an issue upon which the *movant* bears the burden of production at trial. This would permit a genuine issue of material fact to exist upon an issue upon which the movant bears the burden of proof at trial even if the nonmovant has produced no evidence upon that issue, if the nature of the movant's evidence is insufficient to establish that there is no genuine issue of material fact, perhaps because of serious questions concerning the credibility of the movant's witness, for example. *E.g.,* casualty loss claimant who has multiple record of convictions for perjury and for defrauding insurers may not be able to obtain summary judgment against his insurance carrier even though carrier can offer no affirmative evidence to rebut his affidavit.

law for the following reasons: (1) Rubin cannot offer competent testimony to establish causation because he lacks personal knowledge of the fire investigation; (2) Rubin cannot identify the specific BX cable that caused the fire; (3) proof of misconduct does not give rise to liability absent evidence that the misconduct caused the injury; (4) it is improper to infer causation of the fire when other possible causes exist; and (5) mere identification of an instrumentality that could have caused the fire does not necessarily support an inference that Landmark was negligent, absent evidence of a malfunction or defect that could have been corrected or prevented with due care.

Our review of a trial court's decision on summary judgment is *de novo*, since the propriety of its decision is a question of law. Moreover, we must construe the evidence most strongly in favor of the plaintiffs. As we noted above, the record before us does not include much of the evidence that was before the trial court in the earlier litigation. The parties refer to evidence that was not before the trial court on remand and, thus, is not before us in this appeal. Based on the evidence in the record in this appeal, we conclude that Landmark has not met its burden to show that plaintiffs' evidence that energized BX cable caused the fire is insufficient and, thus, speculative. Therefore, we conclude that genuine issues of material fact exist for trial.

We have addressed Landmark's first argument in the preceding section of this opinion. Because we find that Rubin is competent to offer expert testimony and that his opinion would be admissible, if properly based on predicate facts, Landmark has not met its burden to show that Rubin's deposition testimony is insufficient and, thus, speculative.

The second argument that Landmark raises to show that plaintiffs' causation evidence is insufficient to support their claims is based on their reading of *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 523 N.E.2d 489. Landmark argues that "[m]erely claiming the fire started among unidentified wires is not enough to support a claim of negligence." We do not agree with Landmark's interpretation of the analysis in *Chrysler*, but instead, think it stands for the fundamental proposition that a plaintiff must present evidence of a causal link in a tort action to survive a directed verdict.

In *Chrysler*, the Supreme Court concluded that the plaintiffs had failed to present evidence to show that a specific design or manufacturing defect or negligent repair by the dealer caused their car to catch fire when it was parked in their garage and turned off. The car was destroyed and the fire damaged the plaintiffs' home. *Id.* at 8–9, 523 N.E.2d at 496–497. The Supreme Court agreed with the trial court, which had granted a directed verdict at the close of plaintiffs' case, that plaintiffs had presented no proof that a design or manufacturing defect or that negligent repair caused the fire.

Although plaintiffs had presented proof of various electrical and component problems and expert evidence eliminating other probable causes, they had failed to present evidence of any specific defect and failed to present evidence linking the problems with the fire. With respect to the negligent repair claim, the plaintiffs failed to present evidence on the applicable standard of care or that the dealer had breached its duty.

After reviewing the history of product liability case law, the court compared the evidence presented by the plaintiffs to their claims for recovery and noted that this case did not alter plaintiffs' rights under strict products liability common law, "but merely constitutes *an application of the law to evidence presented* which, when construed in favor of plaintiffs, is insufficient to overcome the defendants' motion for directed verdict." (Emphasis added.) *Id.*, 37 Ohio St.3d at 10, 523 N.E.2d at 497. The *Chrysler* court found the plaintiffs' proof of causation wanting on all their claims.

■ We fail to see that the *Chrysler* analysis requires a plaintiff to point to a specific wire to prove causation, as Landmark has argued. Rather, a plaintiff must present evidence of a causal link, as in other negligence claims, not mere speculation. The following evidence, with the proper foundation, shows genuine issues of material fact on the question of a causal link between actions or omissions of Landmark and the fire: (1) job specifications on the electrical drawings for the remodeling work required contractors to remove old wiring, BX cable, before installing new EMT conduit; (2) a lack of evidence that anyone other than Landmark or Howard had access to the wiring; (3) the store owner reported electrical breakers shorting out after the remodeling work and before the fire; (4) construction workers installing an overhead rolling gate at the front of the store reported receiving shocks from old, supposedly deactivated wiring; (5) photographs show arced BX cable in the fire damage, show BX cable connected to a junction box and connected to EMT conduit, and show external rather than internal damage to the HVAC unit.

Thus, we disagree with Landmark that the facts in *Chrysler* are "remarkably similar" to the facts in the present case. In *Chrysler,* the plaintiffs had no evidence showing causation. In the case before us, plaintiffs have evidence sufficient to show genuine issues of material fact on causation.

With respect to Landmark's three remaining arguments, we also conclude that the above facts, with the proper foundation, show that genuine issues of material fact exist for trial. To review Landmark's arguments, Landmark argued that, third, proof of misconduct does not give rise to liability absent evidence that the misconduct caused the injury; fourth, it is improper to infer causation when other possible causes exist; and fifth, mere identification of an instrumentality that could have caused the fire does not necessarily support an inference that

Landmark was negligent, absent evidence of a malfunction or defect that could have been corrected or prevented with due care. While we agree with these propositions of law, we do not agree that they apply to the facts before us.

We have addressed the fourth argument in the preceding section of this opinion. Briefly, the parties have evidence of two possible causes of the fire. Rubin testified that he eliminated the HVAC unit as the cause based on photographs and reports from persons who examined the unit. Rubin testified that it was his opinion that energized BX cable ignited combustibles and caused the fire.

With respect to the third and fifth arguments, we find that the evidence noted above shows genuine issues of material fact for trial regarding the existence of a causal link between the actions or omissions of Landmark and the fire.

Before concluding, we must comment concerning Landmark's arguments that (1) Rubin's deposition testimony contradicted statements in his affidavit, and (2) Rubin's testimony is an attempt to admit other witnesses' testimony through a back door. The trial court found a conflict between Rubin's deposition testimony in which Rubin named the various sources that were the bases of his opinion and his affidavit in which he attested that the statements in his affidavit were based on his personal knowledge. We see no conflict between Rubin's deposition testimony and his affidavit with respect to his competency to testify to his opinion. Thus, we do not agree that Rubin, as a fire cause expert, lacks the personal knowledge in his sphere of expertise to opine, based upon facts to be established by the testimony of others, concerning the cause of an electrical fire.

Moreover, we do not agree with Landmark that Rubin's affidavit contradicts his deposition testimony when read in context and in its entirety. Our review of Rubin's deposition and affidavit convinces us that his opinions have been consistent. First, Landmark claims that "Rubin testified during his deposition that the use of BX cable is acceptable if installed correctly and tied in properly." In his deposition, Rubin testified that electrical codes at the time of the remodeling did not permit use of BX cable, although BX cable had been acceptable in the past:

"Q. Apparently BX cable was used at one time as cable for installation of electrical service; is that correct?

"A. Correct.

"Q. And at some point it was determined that BX cable would no longer by used?

"A. Correct.

"Q. Is BX cable used currently anywhere by any code that you are aware of?

"A. No.

"Q. When was BX cable discontinued from use in construction?

"A. I don't have that date.

"Q. Is there anything that you are aware of, sir, that makes BX cable inappropriate for carrying electrical current?

"A. Yes. One of the reasons why BX cable was eliminated was, one, it's only a two wire system. They depend upon the metal sheath to be the ground. Also, the design and the application of cutting the ends of BX cable and the connector led to damage to the wire in certain places. Especially with inexperienced people doing it, cutting the ends of that is very difficult and trimming it back is very difficult in BX cable."

Later, Rubin testified:

"Q. BX cable was at one time an acceptable way of doing electrical service work, was it not?

"A. Correct.

"Q. And the mere fact that BX cable has been used in a building does not mean that the building's electrical service was defective in and of itself just because it's BX, does it?

"A. BX per se, if it's installed properly and tied into properly, is acceptable.

"Q. And there are lots of buildings and lots of residences that still have BX cable in them, are there not?

"A. There are."

Next, Landmark argues that Rubin testified "in his deposition that a wire or cable could arc without being energized." Landmark contends that Rubin contradicted this testimony in paragraph 12 of his affidavit, in which he stated that BX cable must be electrified in order to arc. It is apparent to us that Landmark either misunderstands basic electrical principles or does not understand Rubin's testimony. Rubin testified that "the only way [BX cable] can arc is to become energized."

"Q. You are saying it's impossible to have an arced wire that's not energized?

"A. It's highly improbable that it could be. The only thing I could think of, okay, is if I had BX cable laying next to a hot wire and that wire shorted, okay, and they were so close together, okay, that the arc went onto the BX cable, but it wouldn't damage—I don't believe it would even damage the wire because of the metal sheath and the insulation of the wires. No, I don't believe you could have arcing from another source.

"Q. Okay.

"A. The BX cable has to be energized to have that arcing on there."

Landmark then points out in it its brief that Rubin testified that he could think of six different causes of arcing. A review of his testimony shows that Rubin testified to different ways an energized wire can arc, not six different ways a dead wire can arc. We see no contradiction in Rubin's testimony on this point.

Finally, Landmark argues that "Rubin also originally testified in his deposition that arcing, which he later claimed caused the fire, can be detected through signs of 'beading' of wire even though arcing is not the cause of a fire. Beading of wire, which is evidence of arcing, can be caused by the fire itself. These contradictory opinions could properly have been stricken due to their conflict with prior deposition testimony." We fail to see the contradiction in the deposition testimony.

Initially, we note the following testimony:

"Q. What causes arcing in wires, sir?

"A. Well, there could be a couple of things. It could be a breakdown of the insulation, a breakdown of a connector or potentially it either returns to ground or neutral or touches a metal building part which is grounded which causes an arc, produces an arc.

"Q. Does arcing in a wire mean that it's the cause of the fire, always?

"A. Not necessarily.

"Q. You can have arcing of a wire without it being a cause of fire, can you not?

"A. Correct.

"Q. You can have beading of wire, or electrical wire, without it being the cause of fire, too, can you not?

"A. Correct.

"Q. Beading of wire can be caused either by the fire or may be a cause of the fire itself, true?

"A. Correct."

Rubin testified that the most likely cause of the fire was energized BX cable igniting combustibles:

"It's my opinion that the contractor energized the BX cable in such a way that he could not verify it was all safe above that concealed ceiling.

"He would have no idea of knowing if there was a junction box up there, a five, six foot length of BX cable tied together is hanging out there with its ends not taped up or protected. He would have no way of knowing that. I feel it was

unsafe to tie into the system not knowing where it was going to or how it was even wired."

Consequently, we read Rubin's testimony as saying that while the most likely cause of the fire is that energized BX cable arced and ignited something, it is not accurate to say that every instance of arcing will cause a fire. Just as naturally occurring arcing, lightning, may strike a metal rod or earth and be absorbed, lightning can also strike dried tree trunks or other combustibles and ignite a fire.

In its motion for summary judgment, Landmark also protested that Rubin's deposition testimony was offered to present the opinions of Billy Sadler and Fred Manley through a back door. This court affirmed the trial court's exclusion of Sadler's testimony on the basis that he was not qualified to be an expert since he was not licensed as a private investigator under R.C. 4749.13. *Pennsylvania Lumbermens Ins. Corp. v. Landmark Elec., Inc.* (Dec. 29, 1993), Montgomery App. No. 13882, unreported, 1993 WL 541644. Because Sadler's testimony has been excluded, Rubin cannot rely on his evidence as a basis for his own opinion.

Manley worked as an independent contractor for Valley Technical Services, Inc., of which Rubin was vice-president. Manley investigated the scene at the same time as Harold Park and took photographs of the structural remains and fire damage. As part of his work for Valley Technical Services, Manley prepared an extensive report that Rubin reviewed and signed off on before it was sent to the client, Brininger and Associates. The fact that Manley's whereabouts are currently unknown should not prevent the use of his report on summary judgment since it was an exhibit to Rubin's deposition, as well as possibly being otherwise admissible as a record of a regularly conducted activity made near the time by a person with knowledge and it was the regular practice of that business activity to make a report. Evid.R. 803(6). Thus, Manley's report could be properly used as a predicate fact for Rubin's opinion.

We note that Rubin testified in his deposition that he based his opinion on the following evidence: (1) Manley's report; (2) Harold Park's deposition; (3) report from Brininger and Associates; (4) deposition of Landmark Electric; (5) deposition of Donald Thomas; (6) construction drawings of the remodeling project; (7) copies of the file from Landmark Electric, including the estimate and some change orders; (8) notes on the construction drawings requiring the electrical contractor to install new EMT conduit; and (9) various photographs identified during his deposition of the fire damage. Given that Rubin is basing his opinion on factual evidence from several sources, other than Sadler, that could meet the evidentiary requirements of Civ.R. 56, we do not agree that Rubin's opinion is incompetent because he had spoken to Sadler or had relied at one time on Sadler's statements or opinions.

Based on the record in this appeal, which reflects the evidence put before the trial court pursuant to Civ.R. 56, we cannot say that Landmark met its initial burden of establishing that there is no genuine issue of material fact. Had it done so, we would necessarily conclude that the plaintiffs had failed to rebut that showing, since they similarly failed to put before the trial court evidence of the predicate facts upon which Rubin's opinion was based. On remand, both parties may seek to remedy these deficiencies. If *both* succeed, there could still be a genuine issue of material fact.

The plaintiffs' second assignment of error is sustained.

## IV

Both of the plaintiffs' assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J., and GRADY, J., concur.