Plaintiff-appellant, Damian Louis Barille, appeals the decision of the Cuyahoga County Common Pleas Court granting the motions for summary judgment of defendants-appellees, Heinen's, Inc., Timothy J. Meyer and West American Insurance Company. For the reasons that follow, we reverse and remand.
 I.
The following facts are pertinent to this appeal. On January 30, 1995, Heinen's provided formal notice to its landlord, the T.W. Grogan Company, that it would be terminating its lease and occupation of a grocery store in the Aurora Commons Shopping Center as of March 31, 1995. Jeff Heinen, co-president of Heinen's, and Mark Grogan, senior vice-president of operations at T.W. Grogan, the owner of the building, negotiated the particulars as to the condition in which Heinen's would leave the premises for the next tenant, a Marc's retail discount drug store.
After Heinen's closed its store for business in March 1995, Heinen's maintenance employees removed various equipment, fixtures and scrap material from the store. Robert Longhino, head of maintenance for Heinen's, acted as foreman on the site. Longhino testified in his deposition that he was an electrician and had been an electrical contractor. In addition, James Frajter, a member of the Heinen's crew that did the clean-up work at the Aurora Commons store, was a "very good" electrician.
Longhino testified that he started working for Heinen's in 1988 and that starting then, until the store closed nine years later, he would inspect the gear in the electrical vault room once a year and tighten up any connections that might have loosened. Longhino testified that the main distribution panel in the electrical vault room was original equipment installed by Heinen's in the early 1970's and had "never been touched." Longhino testified that Heinen's removed copper, aluminum and steel from the Aurora Commons store for recycling, but denied that Heinen's removed any wire from the store other than the emergency feed from the generator. Longhino also denied that Heinen's did any work in the main electrical vault room other than to cut the wire to the generator that was attached to the automatic transfer switch in the electrical vault room.
Other Heinen's employees also denied that Heinen's removed any wire from the Aurora Commons store during their clean-up work at the store. James Frajter, Heinen's electrician, testified that Heinen's did not remove any wire at all from the store. Wayne Hopkins testified that he never saw anyone disconnect or remove any electrical wire. Robert Novak similarly testified that he never saw anyone removing electrical wire from the store or putting electrical wire in a dump truck for recycling.
On Friday, March 31, 1995, Longhino turned over the keys to the Aurora Commons store to a representative of T.W. Grogan and Heinen's exited the store. According to Longhino, there were some things that he would have liked to have taken out of the store but was not able to get out because of the March 31 deadline for vacating the store. Longhino testified that he and his crew worked late at least three nights in the last week, and that they worked late on the last night before they turned over the keys.
Prior to Heinen's exiting the store, T.W. Grogan had hired Executive Building Maintenance, a company owned by Timothy Meyer, to perform further demolition and cleaning work at the store after Heinen's left. Meyer and his crew began work on the Saturday or Sunday following Heinen's departure and stayed on site for approximately fifteen days.
In his deposition, Meyer testified that he visited Heinen's several times before he began working at the store to ascertain the scope of the work that his company would be doing at the site. His first visit to the store took place shortly after Heinen's had closed for business in March 1995, and had started its clean-up work on the property. Meyer testified that he did not observe anything unique during this visit.
On his second visit to the store, made approximately ten days to two weeks after the first visit and two to three days before he began his demolition work at the store, Meyer walked through the store with Mark Grogan, Robert Boothe, project manager at T.W. Grogan Co., and Frank Schwartz, superintendent for T.W. Grogan Co. Meyer testified that on his second visit to the store, he observed that Heinen's was doing "salvage work" in the store, which involved removing copper plumbing, copper pipe and copper tubing, separating the soldered connections and then separating the copper and the removed connections into two piles. Meyer testified that he saw all types of electrical wire in the two piles, "from just the real thin-type stuff to the real big thick stuff."
Meyer testified further that when he, Grogan, Boothe and Schwartz went into the mechanical equipment room on the upstairs, mezzanine level, he observed wires little bigger than a dime in circumference that had been cut off just outside the boxes on two electrical boxes and left hanging bare, with no tape around the ends. Upon observing this, Meyer commented, "Look what the butchers did." Meyer explained that "in that particular scenario, it was very unsafe that someone having any care about what they were doing would have left that looking like that. And it was faster for them to just clip the wire off than it was to undo the fastener and remove the wire."
Meyer testified that throughout the ceiling in the mezzanine area, he saw electrical conduits that had been emptied of their electrical wire. When he and the others went downstairs, Meyer saw more than ten conduits coming through the ceiling where the wires had been removed. Outside the main electrical room, Meyer looked up and saw holes going into the electrical room that had been emptied of their wire. The holes that Meyer observed were the stub ends of the electrical conduits that led from the main electrical panel in the main electrical room to the two electrical panels in the equipment room on the mezzanine level.
Meyer questioned Robert Longhino extensively that day regarding all of the power that energized the various areas of the store. According to Meyer, he specifically discussed with Longhino the electrical power to the mezzanine level. Meyer testified that Longhino told him that "they had removed everything," and pointed to the empty conduits and areas where the wires were gone.
Meyer also testified that the conduits were cut and the wire was removed before he began his work and certainly before any of the contractors from Marc's arrived on the scene to do their work. Meyer testified that he is not an electrician and that no one on his crew had any electrical background or training.
Robert Boothe, project manager for T.W. Grogan Co., testified in his deposition about the walk-through of the store that he conducted with Meyer and Grogan. Boothe testified that Heinen's had completed ninety-five percent of its work by this time. According to Boothe, it appeared that anything of value that could be salvaged, including electrical wire, had been removed. Boothe recalled that the wires coming out of the two electrical boxes in the equipment room on the mezzanine had been snipped at the top and that there were no wires going into or coming out of the boxes. Boothe also recalled Meyer's comment, "Look what the butchers did," regarding the way the wires had been cut and left bare.
In addition to Meyer and Boothe, several other witnesses testified in their depositions regarding the removal of wire from the property by Heinen's. Mark Grogan, senior vice-president of operations for T.W. Grogan Company, testified that he visited the former Heinen's store on several occasions after Heinen's closed for business and before Heinen's finished its clean-up work on the property. He testified that he remembered seeing neat piles of coil, wire and copper tubing on pallets, ready to be moved out. The wire ranged in size from smaller wiring used in a light switch to large wiring that would feed refrigeration equipment. Grogan testified that he visited the store several times after Heinen's had vacated the premises, but did not see anyone else removing copper tubing or wiring from the store.
Terry Spooner, an employee of D.W. Ross, testified that in late Winter 1995, his employer sent him to the former Heinen's store in Aurora to pick up cooler doors. Spooner testified that as he entered the store from the rear, he saw a dumpster filled about four feet in height with copper tubing, thick copper wire and thick aluminum wire.
Cliff Oravec, Marc's general contractor, averred that he visited the store on March 30, 1995, at approximately 2:30 p.m. to determine how much scrap was still left in the store for his crew to salvage and sell. According to Oravec, there was almost no electrical wire in the store that could be salvaged and sold. All of the wire had been removed from the store. Oravec observed that in the mechanical equipment room on the mezzanine level, the wires exiting the panel boxes had all been cut off, leaving only little stubs. Outside the main electrical room, some of the conduits had been cut off and the wires had been removed from them.
Upon Meyer's completion of his work at the Aurora Commons store, Marc's received the keys to the store and its architects, engineers and subcontractors began their work in the store. One of the contractors hired by Marc's was Barille Construction, who was to perform electrical work at the store. Barille Construction designated appellant as its foreman for the project.
June 1, 1995 was appellant's first day of work at the store. In the late morning, he entered the main electrical room of the store, which housed a high-voltage main distribution panel. Electricity from Ohio Edison was fed into a transformer located directly behind the outside wall to the main electrical room. This transformer channeled electricity, through underground feeders, to three copper "bus" bars located in the bottom half of the main distribution panel. The bus bars carried or distributed all of the incoming electricity to breakers, which, in turn, controlled the flow of electricity to different subpanels throughout the store.
Appellant entered the main electrical room to inspect the electrical equipment contained in it to determine whether the main switch gear was in working condition. Using a screwdriver and pliers, appellant removed the left side cover of the main distribution panel. Upon doing so, he observed that someone had cut the large wires coming from the main distribution circuit breakers and had left them exposed and unprotected.
After determining that the circuit breakers connected to those wires were turned off, appellant removed the front left side cover, the front bottom cover and the front right side cover of the distribution panel. Seconds after he did so, "the gears started to short out *** [i]t started to buzz and pop as an electrical short."
Appellant shut off the remaining breakers to the main distribution panel and then attempted to look in the panel to discover the cause of the short. When he was unable to determine the cause of the short, appellant decided to exit the room. Before he could do so, an explosion occurred, setting appellant's clothes on fire.
Dr. Theodore Bernstein, a Professor Emeritus of Electrical and Computer Engineering at the University of Wisconsin, and Ralph Dolence, a master electrician and former fire department arson investigator, submitted affidavits in which they evaluated the accident for appellant. Both opined that the cause of the explosion "must have been" a piece of conductive metallic debris that was left inside the main distribution panel by whoever cut the conductor wires behind the panel. The experts opined that this debris was jostled loose when appellant removed one of the panel covers, making contact with the energized bus bars inside the distribution panel and causing an arc and fireball that injured appellant. Furthermore, both experts opined that the person who cut the wires was an electrician, or acted under the supervision of an electrician, because of the great danger the work entailed. Dr. Bernstein stated that the electrical demolition work was "sloppy, unprofessional and dangerous." Mr. Dolence stated that the work was "hurried and haphazard." Both experts also opined that the person who cut the wires was the same person who left the debris in the panel because of the manner in which the work was done.
On January 17, 1997, appellant filed suit against T.W. Grogan Co., Mark Grogan, Heinen's, Inc. and several John Doe individuals and corporations. Appellant subsequently filed an amended complaint to add Timothy Meyer and his insurance company, West American Insurance Co., as defendants. Cincinnati Insurance Company, the insurer for Barille Electric Co., intervened to recover the $15,000 that it paid to its insured as a result of the accident.
On June 25, 1997, T.W. Grogan Co. and Mark Grogan filed a third-party complaint against Marc Glassman, Inc. (Marc's) and asserted cross-claims for contribution against Meyer and Heinen's. Appellant subsequently filed a Civ.R. 41 (A) notice of dismissal, dismissing T.W. Grogan Co. and Mark Grogan, who then filed a Civ.R. 41 (A) dismissal of their claims against Marc Glassman, Inc.
On July 14, 1998, appellees Meyer and West American Insurance Co. filed a joint motion for summary judgment. Heinen's filed its motion for summary judgment on July 15, 1998.
On September 14, 1998, the trial court granted appellees' motions. The trial court's order stated, "Plaintiff failed to demonstrate [the] cause of [the] explosion and therefore defendants' motions for summary judgment are granted."
Appellant timely appealed, assigning four assignments of error for our review:
 I. THE TRIAL JUDGE ERRED WHEN HE GRANTED DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON THE GROUND THAT "PLAINTIFF FAILED TO DEMONSTRATE [THE] CAUSE OF [THE] EXPLOSION," WHERE PLAINTIFF HAD SUBMITTED AFFIDAVITS OF TWO COMPETENT AND QUALIFIED EXPERT WITNESSES THAT THE CAUSE OF THE "EXPLOSION" WAS CONDUCTING (METALLIC) DEBRIS NEGLIGENTLY LEFT IN THE MAIN DISTRIBUTION PANEL BY THE PERSON WHO PERFORMED THE CUTTING AND REMOVAL OF THE LARGE WIRES BEHIND THE MAIN DISTRIBUTION PANEL.
 II. THE TRIAL JUDGE USURPED THE ROLE OF THE JURY WHEN HE DECIDED THAT "PLAINTIFF FAILED TO DEMONSTRATE [THE] CAUSE OF [THE] EXPLOSION."
 III. THE TRIAL JUDGE ERRED WHEN HE ALLOWED DEFENDANTS TO PRESENT ADDITIONAL EVIDENTIARY MATERIALS, IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT, TWO DAYS BEFORE THE TRIAL JUDGE SIGNED THE JOURNAL ENTRY GRANTING THOSE MOTIONS.
 IV. THE TRIAL JUDGE ERRED WHEN HE ALLOWED PLAINTIFF ONLY ONE DAY TO RESPOND TO THE ADDITIONAL EVIDENTIARY MATERIALS PRESENTED BY DEFENDANTS IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT.
 II.
Initially, we note that appellant's brief does not comply with App.R. 16 (A) (7), which requires that an appellant separately argue each assignment of error. This court need not address appellant's assignments of error, therefore, because appellant has failed to argue them in accordance with App.R. 16 (A) (7). See App.R. 12 (A) (2) In the interest of justice, however, we will consider appellant's assignments of error.
 III.
In his first and second assignments of error, appellant challenges the trial court's decision granting summary judgment in favor of appellees.
Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club,Inc. (1998), 82 Ohio St.3d 367, 369-370; Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327. To obtain a summary judgment under Civ.R. 56 (C), the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997), 77 Ohio St.3d 421,430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also,Mitseff v. Wheeler (1988), 38 Ohio St.3d 112. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56 (C). See Renner v. DerinAcquisition Corp. (1996), 111 Ohio App.3d 326, 333; N. CoastCable L.P. v. Hanneman (1994), 98 Ohio App.3d 434, 440.
In a negligence action, it is essential for recovery that the plaintiff produce evidence establishing not only that the defendant is negligent, but also that the defendant's negligence is a direct and proximate cause of the plaintiff's injuries.Gedra v. Dallmer Co. (1950) 153 Ohio St. 258, paragraph one of the syllabus. Where the alleged negligence involves a matter that is outside of the ordinary, common and general knowledge of mankind, it is incumbent upon the plaintiff to produce expert testimony to establish negligence and that the defendant's negligence was the proximate cause of injury. See Ramage v.Central Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97,103-104.
Appellant contends that the trial court erred in granting appellees' motions for summary judgment because the affidavits of his expert witnesses, Dr. Bernstein and Mr. Dolence, create a genuine issue of material fact regarding the cause of the fire and explosion that injured him. We agree.
Both experts based their opinions upon the evidence that appellant submitted in his and other affidavits, along with the photographs identified in those affidavits. Both expert witnesses based their opinions upon facts that were before the trial court and admissible in evidence under Civ.R. 56 (E). Consequently, their opinions were properly admissible under Evid.R. 703.
Heinen's argues, however, that Dr. Bernstein admitted in his deposition that he had never removed a panel cover from a main distribution panel, had never used a sawzall (an electric saw) or seen anyone cut conductor wires. Accordingly, Heinen's contends that Dr. Bernstein lacks the specialized knowledge required by Evid.R. 702 (B) to opine that cutting the conductor wires with an electric saw would have resulted in the dropping of metallic debris in the main distribution panel and that removal of the front panel cover would cause sufficient vibration to jostle the wire debris loose.
Evid.R. 702 (B) provides that a witness may testify as an expert if "the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony."
It is necessary that only one of these characteristics be present to qualify the individual as an expert. Williams v.Williams (1992), 80 Ohio App.3d 477, 480, citing 2 Weissenberger, Evidence (1987), Section 702.4. The individual who is being offered as an expert need not have complete knowledge of the field in question, as long as the knowledge the expert has will aid the trier of fact in its function. Id.
In light of his electrical engineering training, professional experience and extensive experience investigating and analyzing cases relating to electrocution, personal injury, equipment damage and fires caused by electrical systems, Dr. Bernstein demonstrated sufficient familiarity with the subject matter of his testimony to be qualified as an expert witness. Moreover, we note that in his deposition, Dr. Bernstein testified that although he has not personally opened a main distribution panel or cut conductor wires, he has observed other people do that for him in the course of his various investigations. Accordingly, he has specialized knowledge to testify as an expert in this case.
Heinen's also argues that Dr. Bernstein's opinion is inadmissible because it is not held with the requisite degree of scientific certainty. We disagree.
An expert opinion is competent only if it is held to a reasonable degree of scientific certainty. State v. Benner
(1988), 40 Ohio St.3d 301, 313. In this context, "reasonable certainty" means "probability." Id. Thus, an expert must state his or her opinions in terms of probability, meaning that he or she must express that there is a greater than fifty percent likelihood that a certain act or failure to act caused a given result. Stinson v. England (1994), 69 Ohio St.3d 451, 455. No specific words are required, but the trier of fact must be provided with evidence that the injury was more likely than not caused by the defendant's negligence. Shumaker v. Oliver B.Cannon Sons, Inc. (1986), 28 Ohio St.3d 367, 374; Dellenbach v.Robinson (1993), 95 Ohio App.3d 358, 373.
Dr. Bernstein opined that the cause of the explosion and fire that caused appellant's injury "had to be" a piece of conducting metallic debris left inside the main distribution panel by whomever cut the conductor wires behind the main distribution panel. The words "had to be" clearly express Dr. Bernstein's opinion in terms of the requisite probability, i.e., a more than fifty percent likelihood that whoever cut the conductor wires caused appellant's injury. Indeed, the meaning of the words "had to be" is clear: there is no other explanation for the cause of the explosion and fire.
Finally, Heinen's argues that Dr. Bernstein's and Mr. Dolence's opinions are nothing more than "mere speculation" and, therefore, inadmissible. See McKee v. Electric Auto-Lite Co. (1958),168 Ohio St. 77, 79-82; Pennsylvania Lumberman's Ins. Corp. v.Landmark Electric, Inc. (1996), 110 Ohio App.3d 732, 743-744. Heinen's contends that because the experts cannot identify the specific metallic debris that caused the fire and explosion, where the debris was located prior to its alleged fall, who did the alleged work in the panel that caused the debris to become lodged in the panel, what work was done or even when the work was done, their opinions are too speculative to be admissible. We disagree.
Ohio law does not require the level of specificity sought by Heinen's in order for an expert witness opinion to be admitted into evidence. Rather, appellant must present "evidence of a causal link between the actions or omissions of a defendant and the injury suffered." Pennsylvania Lumbermens Ins. Corp. v.Landmark Elec., Inc. (1996), 110 Ohio App.3d 732, 741, citingState Farm Fire Casualty Co. v. Chrysler Corp. (1988), 37 Ohio St.3d 1. We find that Dr. Bernstein's and Mr. Dolence's opinions contain sufficient evidence of a causal link between appellees' actions and appellant's injury to be admissible.
Both experts used the same analysis. The photographs submitted with the affidavits reviewed by each expert indicate that the electrical fault occurred near the bottom of the bus bars and that the bus bar panel cover was in place, on the main distribution panel, when the explosion occurred. With the bus bar panel in place at the time of the accident, appellant's experts concluded that there was no way that appellant could have gotten access to the area where the electrical fault occurred, and there was no way that he could have done anything that could have caused the accident. Although an electrical fault can occur from a naturally occurring insulation failure, the coincidence of such a fault at the precise time that appellant was opening the panel rules out that possibility. Accordingly, both experts concluded, the cause of the electrical fault "must have been" a piece of conducting, metallic debris that was jostled loose when appellant removed one of the panel covers.
Both experts focused upon the cutting and removal of the large conductor wires coming from the main distribution circuit breakers. Dr. Bernstein described the work as "sloppy, unprofessional and dangerous." Mr. Dolence described the work as "hurried and haphazard," creating a "blatant life hazard" and making conditions in the area "extremely dangerous." Both experts opined that whoever performed this sloppy and haphazard work caused a piece of metallic debris to become lodged somewhere in the main distribution panel, eventually causing the electrical short and the explosion that led to appellant's injury.
These opinions, coupled with appellant's extensive evidence that it was Heinen's employees who cut and removed the large electrical wires behind the main distribution panel, demonstrate a causal connection between Heinen's actions and appellant's injury sufficient to create a genuine issue of material fact regarding the cause of appellant's injury. Accordingly, the trial court erred in granting Heinen's motion for summary judgment.
The trial court also erred in granting the motions for summary judgment of appellees Timothy Meyer and West American Insurance Co. Meyer argues that appellant's theory is that he was injured after he removed a panel cover from the main distribution panel, thereby dislodging a piece of metallic debris left in the panel by whomever cut the conductor wires. Therefore, Meyer argues, he is entitled to summary judgment because appellant did not produce any evidence that he cut the conductor wires in the main distribution panel. We disagree.
Although Meyer asserted in his deposition that he did not cut the wire, he also admitted that the wires were cut before he completed his work at the Aurora Commons Store. Appellant has produced evidence that the only entities who performed any work on the premises before Meyer completed his work were Heinen's and Meyer. Thus, if the conductor wires were cut and removed before Meyer completed his work, they had to have been removed by either Heinen's or Meyer. Heinen's claims, and its employees have testified, that Heinen's did not cut the conduits or remove the wires. Although these employees may be lying, in light of appellant's evidence that the wires could have been cut only by Heinen's or Meyer, their denials create a genuine issue of fact regarding whether Meyer or Heinen's cut the wires. Accordingly, the trial court erred in granting Meyer's motion for summary judgment.
Appellant's first and second assignments of error are sustained.
 IV.
Appellant's third and fourth assignments of error are rendered moot by our disposition of his first and second assignments of error and, therefore, need not be considered. See App.R. 12 (A) (1) (c).
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellees his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JUDGMENT: REVERSED AND REMANDED.
 _____________________ Timothy E. McMonagle Judge
ROCCO. J. CONCURS; and KARPINSKI, P.J., CONCURS IN PART AND DISSENTS IN PART (WITH OPINION).