[Cite as *Graf v. Nelsonville*, 2019-Ohio-2386.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY


BYRON GRAF II,                                  :

    Plaintiff-Appellant,                   :        Case No.   18CA28

    vs.                                          :

CITY OF NELSONVILLE, et al.,      :    DECISION & JUDGMENT ENTRY

    Defendants-Appellees.             :

_____

APPEARANCES:

Kenneth E. Ryan, Athens, Ohio for appellant.

Mark Landes and Molly R. Gwin, Columbus, Ohio, for appellees.

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:6-10-19
ABELE, J.

{¶ 1}    This is an appeal from an Athens County Common Pleas Court summary judgment in favor of several Nelsonville city employees, defendants below and appellees herein.[1]   The trial court determined that appellees are entitled to statutory immunity for the claims asserted by Byron Graf, plaintiff below and appellant herein.

---

[1] Appellees are: (1) City Manager Mark Hall, Sr.; (2) Assistant City Manager and Code Enforcement Officer Steve Pierson; (3) Nelsonville Fire Chief Harry Barber III; (4) Chief of Police Jason Wallace; (5) Nelsonville police officer Bernard Vancurren; and (6) Nelsonville City Prosecutor Richard Hedges.

{¶ 2}     Appellant assigns the following error for review:

"THE TRIAL COURT ERRORED [SIC] BY FINDING THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED WITH RESPECT TO APPELLANT'S CLAIMS AND GRANTING SUMMARY JUDGMENT FOR APPELLEES WITHOUT A HEARING."

{¶ 3}     The present case arises out of a dispute between appellant and the city regarding appellant's use of property located on the site of a former drive-thru and carry-out facility.  After appellant purchased the property, city employees expressed concern that appellant was not complying with state building codes and Nelsonville City Code provisions.  Eventually, the city condemned the property.  Once appellant became compliant, the city lifted the condemnation order.

{¶ 4}     Approximately three years later, appellant filed a pro se complaint against the city and multiple city employees, including police officers, council members, city manager, fire chief, city prosecutor and members of the planning commission.  Appellant levied a laundry list of charges against appellees, but in essence, alleged that appellees engaged in a pattern of behavior designed to frustrate his use of the property and to cause the property's condemnation.

{¶ 5}     All defendants filed a motion for judgment on the pleadings.  The trial court granted the motion with respect to all defendants, except for these appellees.  Appellees later filed a summary judgment motion and claimed that they are entitled to R.C. 2744.06(A)(6) statutory immunity for the following reasons: (1) they did not act outside the scope of their employment or official responsibilities; (2) they did not act with malicious purpose, in bad faith, or in a wanton or reckless manner; and (3) civil liability

is not expressly imposed upon them by another Revised Code section.

{¶ 6}     Appellees claimed that Fire Chief Barber is responsible for conducting fire safety inspections for new construction and for existing buildings and structures.  Appellees asserted that Chief Barber thrice attempted to obtain consent to enter appellant's property, but appellant told Barber that Barber would need a warrant.  Appellees stated that Barber then obtained a warrant, and inspected the property and found code violations.  Appellees argued that none of Barber's activities fell outside the scope of his employment or were undertaken with malicious purpose, in bad faith, or in a wanton or reckless manner.  They further alleged that no other Revised Code provision expressly imposed liability upon Barber.

{¶ 7}     Appellees also asserted that Director of Code Enforcement and Assistant City Manager Steve Pierson handles code enforcement and compliance and that Pierson's job is to advise the City Manager and to enforce compliance and permitting.  Appellees stated that after appellant purchased the property, Pierson noted construction work occurring, particularly the presence of four electrical meters on the side of the building.  Appellees alleged that Pierson became concerned that appellant had violated the state building code.  Pierson later sent a letter to appellant to advise him, that within fourteen days he needed to obtain an application for a conditional use permit and an application for a flood hazard development permit.  Pierson, however, did not receive a completed application.

{¶ 8}     Appellees asserted that Pierson continued to notice work on the property and, as a result of appellant's continued non-compliance, Pierson, Chief Barber, and the State of

Ohio Building Department went to the property to execute an administrative search warrant. The property subsequently was condemned.

{¶ 9}    Appellees claimed that on July 1, 2014, appellant applied for the necessary permits and that the permits were issued the next day. Appellees indicated that after appellant obtained the necessary permits, the city lifted the condemnation order. Appellees argued that all of Pierson's actions fell within the scope of his employment and were not taken with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 10}    Appellees further asserted that all of City Manager Mark Hall's actions fell within the scope of his employment and were not taken with malicious purpose, in bad faith, or in a wanton or reckless manner. Appellees alleged that Hall's involvement in the matter was minimal–that he only monitored the condemnation proceedings and signed the condemnation order. Appellees further asserted that Hall communicated with appellant on one occasion–when appellant contacted Hall to obtain additional water taps.

{¶ 11}    Appellees likewise argued that all of City Prosecutor Rick Hedges's actions fell within the scope of his employment and were not taken with malicious purpose, in bad faith, or in a wanton or reckless manner. Appellees claimed that Hedges acted in his capacity as city prosecutor and was involved in the Mayor's Court proceedings. Appellees additionally asserted that Hedges is entitled to prosecutorial immunity.

{¶ 12}    Appellees also argued that neither the Chief of Police nor Officer Vancurren engaged in any conduct outside the scope of their employment, or conduct that could be construed as malicious, in bad faith, or wanton or reckless

5

{¶ 13}     To support their motion, appellees produced several affidavits.  Pierson averred that in April 2013, he noticed construction work occurring on appellant's property and observed four electrical meters on the side of the building.  Pierson stated that he had a concern that appellant's construction violated the building code and contacted the State Building Department.  Pierson indicated that in September 2013, he sent appellant a certified letter that notified appellant that appellant was not in compliance with various Nelsonville City Code provisions.  The letter further notified appellant that he should complete the Application for Conditional Use Permit and Application for flood hazard development permit within fourteen days.  Pierson stated that he did not receive a completed application and that appellant continued construction on the property.  Pierson explained that he then filed a complaint in Mayor's Court due to the alleged code violations.  Later, the case was dismissed.

{¶ 14}     Pierson stated that on November 1, 2013, Fire Chief Barber obtained an administrative search warrant to search appellant's property and that Pierson accompanied Barber.  Pierson explained that on November 6, 2013, a condemnation order was issued.  Pierson stated that in July 2014, appellant applied for flood hazard and zoning permits.  Pierson averred that shortly after the permits were granted, the condemnation order was removed.

{¶ 15}     In his affidavit, Barber stated that in October 2013, he noted that the property appellant purchased had "undergone significant interior construction."  Barber indicated that he had received verbal complaints from Pierson and a city police officer and had reason to believe that appellant had violated building codes.  Barber explained that he

attempted to discuss the matter with appellant and to obtain appellant's consent to inspect the property, but appellant advised Barber that he could not enter the property without a warrant. Barber stated that he then obtained an administrative search warrant.

{¶ 16} Barber averred that on November 1, 2013 he served the administrative search warrant and, accompanied by the State Fire Marshall, the Department of Industrial Compliance, and the Nelsonville Code Compliance Officer, he observed many code violations during the search. Barber indicated that appellant continued to work on the property "despite repeat requests to cease and desist." Barber also asserted that he believed that the code violations posed a threat to the lives and safety of the tenants and recommended that the city begin condemnation proceedings.

{¶ 17} City Manager Mark Hall stated that in October 2013, Barber and Pierson advised him of their concerns regarding appellant's property. Hall explained that "[w]hen it became necessary to condemn the Property, [he] signed the condemnation order as part of my job duties as the City Manager." Hall indicated that the only communication he had with appellant concerned appellant's request for the cost of additional tap fees.

{¶ 18} In his affidavit, Richard Hedges stated that a complaint was filed against appellant for violating provisions of the Nelsonville City Code. Hedges explained that appellant was summoned to appear in Mayor's Court and that the case eventually was dismissed.

{¶ 19} In his memorandum in opposition, appellant asserted that genuine issues of material fact remain for resolution at trial regarding whether appellees acted outside the scope of their official duties, or were undertaken with malicious purpose, in bad faith, or

in a wanton or reckless manner.

{¶ 20} Specifically, appellant claimed that genuine issues of material fact remain regarding Pierson's conduct for the following reasons. On July 14, 2015, Pierson sent appellant a "notice of violation." The notice advised appellant of the Nelsonville City Code provisions regarding abandoned, inoperable, and unlicensed motor vehicles. Appellant claimed that Pierson knew that the subject vehicle did not belong to appellant and that Pierson sent the notice of violation as a means of intimidating or threatening appellant. Appellant asserted: "This is one of dozens and dozens of instances that [appellant] will bring into open court to prove by a preponderance of evidence that Mr. Pierson's acts were acts or omissions that were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 21} Appellant also alleged that Pierson's conduct regarding the construction work shows that Pierson acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Appellant pointed to Pierson's affidavit in which he states that he noticed the alleged violations in April 2013 and contacted the State Building Department. Appellant asserted that Pierson's statement implies that he contacted the State Building Department shortly after he observed the alleged violations. Appellant suggests, however, that Pierson did not actually contact the State Building Department until September 2013. Appellant alleged that Pierson's delay shows that Pierson did not have a genuine concern regarding the purported violations.

{¶ 22} Appellant additionally claimed that Pierson's statements regarding the certified letter Pierson sent in September 2013 support a finding that Pierson acted with malicious

purpose, in bad faith, or in a wanton or reckless manner. Appellant noted that Pierson stated in his affidavit that (1) Pierson sent appellant a certified letter to notify appellant of the purported violations, (2) the letter notified appellant that appellant should complete an application for conditional use permit and application for flood hazard development permit within fourteen days, and (3) Pierson did not receive a completed application. Appellant, however, asserted that Pierson's affidavit does not reveal the truth of the circumstances. Appellant claimed that he had "numerous contacts" with Pierson and that Pierson sent appellant an email, dated October 21, 2013, that stated: "My expectation is that you will submit the application soon, but in no case later than November 9, 2013."

{¶ 23}    Appellant then alleged that Fire Chief Harry Barber, contrary to Pierson's statement that appellant had until November 9, 2013 to submit an application, obtained an administrative search warrant dated November 1, 2013. Appellant asserted that even though Pierson observed alleged violations as early as April 2013, Pierson "intentionally [chose] to do nothing about the matter until the day after [appellant] is headed back to Florida for the winter in September 2013, when it is most inconvenient for [appellant] to address the situation." Appellant argued that Pierson "has acted arbitrarily toward [appellant] and has misled [appellant] and others concerning building requirements."

{¶ 24}    Appellant additionally complained that Pierson gave him conflicting information regarding the need for a flood plain development permit. Appellant asserted that in September 2014, appellant received a notice of violation for failing to obtain a flood plain development permit, yet in April 2016 Pierson advised appellant that he did not

need a "local permit" to raise a roof line and lay new shingles on the roof.

{¶ 25}     Appellant further alleged that Pierson's affidavit contains false information. Appellant noted that Pierson's affidavit indicates that appellant purchased the property at a sheriff's sale, but appellant claimed that he actually purchased the property from a bank. Appellant contended that Pierson's affidavit shows that he is "reckless with the truth."

{¶ 26}     Appellant also claimed that Barber gave appellant "false, bad and or [sic] misleading information." Appellant asserted that Barber's affidavit stated that in October 2013, Barber noted that appellant's property had undergone significant construction and that Barber's affidavit thus indicates that October 2013 "was the first time that [Barber] was aware of any issue and attempted to make contact with [appellant]." Appellant alleged that he had "numerous contact" with Barber before October 2013.

{¶ 27}     Appellant contended that on August 30, 2013, Barber stopped at the property and asked to enter the premises. The contractor on site advised Barber that the contractor did not have authority to authorize entry. The contractor gave Barber appellant's cell phone number. Barber nonetheless informed the contractor that appellant could not have more than four units at the building. Appellant alleged that Barber then contacted another firefighter who also had been working part-time as a contractor for appellant. Barber asked the firefighter about the number of units appellant planned for the property. During the conversation, Barber advised the firefighter that appellant could have only four units in the building and that Barber would not need to inspect the property if it

contained only four units.  Barber later called appellant on appellant's cell phone to inquire about the number of units.  Barber informed appellant that if the property had more than four units, Barber would have to inspect the property.  Appellant claimed that during the conversation, Barber did not mention permits, flood plains, or any other matters.

{¶ 28}     Appellant also asserted that on October 4, 2013, Phillip Teal from the State of Ohio followed up on Pierson's complaint and did not find any violations.  Appellant claimed that Teal informed appellant that each building could house three units.  Appellant stated that he then informed Pierson of Teal's statements.  Appellant alleged that Teal also advised Pierson of Teal's findings.  Appellant contended that Teal later told appellant that Pierson "was not satisfied and called more times to have Inspector Teal come back again to inspect the Property.  Inspector Teal told [appellant] and others that in his opinion Mr. Pierson is out to get [appellant] and others."

{¶ 29}     To support his arguments, appellant submitted Alanna Underwood's affidavit. Underwood stated that Teal told her that each building could have three units and that Barber was incorrect to state that appellant could have four units in each building. Underwood claimed that Teal later told her that "the only reason he had to keep coming back was because Steve Pierson was out to get [appellant]."

{¶ 30}     On September 12, 2018, the trial court entered summary judgment in appellees' favor.  The court determined that the evidence failed to show that the R.C. 2744.03(A)(6) exception to immunity applies because the evidence does not support a finding that appellees acted manifestly outside the scope of their employment or that

they acted with malicious purpose, in bad faith, or in a wanton or reckless manner. This appeal followed.

{¶ 31}    In his sole assignment of error, appellant asserts that the trial court erred by granting appellees summary judgment. Appellant contends that he presented sufficient evidentiary material to establish the existence of a genuine issues of material fact regarding whether appellees' conduct was with malicious purpose, in bad faith, or wanton or reckless.

{¶ 32}    Appellees assert that the trial court correctly determined that no genuine issues of material fact remained for resolution at trial. Appellees claim that appellant's assertion that the evidence shows that appellees pursued appellant in a vindictive manner is supported by hearsay, which is not sufficient to create a genuine issue of material fact. Appellees further argue that the statements, even if not hearsay, do not establish that any of the employees acted manifestly outside the scope of their employment or that they acted with malicious purpose, in bad faith, or in a wanton and reckless manner.

{¶ 33}    In response, appellant contends that the evidence creates at least a genuine issue of material fact as to whether appellees acted in a reckless manner by misinforming and misleading appellant.

A

STANDARD OF REVIEW

{¶ 34}    Summary Judgment

{¶ 35}    Initially, we note that appellate courts conduct a de novo review of trial court

summary judgment decisions. *E.g., State ex rel. Novak, L.L.P. v. Ambrose*, — Ohio St.3d —, 2019-Ohio-1329, — N.E.3d —, ¶ 8; *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 13; *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. *Grafton*, 77 Ohio St.3d at 105.

Civ.R. 56(C)provides, in relevant part, as follows:

> \* \* \* \* Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 36}  Accordingly, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. *Pelletier* at ¶ 13; *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12; *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶ 37}** The purpose of Civ.R. 56 "is to enable movement beyond allegations in pleadings and to analyze the evidence so as to ascertain whether an actual need for a trial exists. Because it is a procedural device to terminate litigation, summary judgment must be awarded with caution." *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau*, 88 Ohio St.3d 292, 300, 725 N.E.2d 646 (2000) (citations omitted).

**{¶ 38}** Under Civ.R. 56, the moving party bears the initial burden to inform the trial court of the basis for the motion and to identify those portions of the record that demonstrate the absence of a material fact. *Vahila, supra*; *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The moving party cannot discharge its initial burden with a conclusory assertion that the nonmoving party has no evidence to prove its case. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 147, 677 N.E.2d 308 (1997); *Dresher, supra*. Rather, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher, supra*.

**{¶ 39}** "[U]nless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant a summary judgment." *Pennsylvania Lumbermens Ins. Corp. v. Landmark Elec., Inc.*, 110 Ohio App.3d 732, 742, 675 N.E.2d 65 (2nd Dist.1996). Once the moving party satisfies its burden, the

nonmoving party bears a corresponding duty to set forth specific facts to show that a genuine issue exists. Civ.R. 56(E); *Dresher, supra.* More specifically, Civ.R. 56(E) states:

\* \* \* \* When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

{¶ 40} Consequently, "'[m]ere speculation and unsupported conclusory assertions are not sufficient'" to meet the nonmovant's reciprocal burden to set forth specific facts to show that a genuine issue exists. *Bank of New York Mellon v. Bobo*, 4th Dist., 2015-Ohio-4601, 50 N.E.3d 229, ¶ 13, quoting *Loveday v. Essential Heating Cooling & Refrig., Inc.*, 4th Dist. Gallia No. 08CA4, 2008-Ohio-4756, 2008 WL 4278129, ¶ 9. Thus, "'resting on mere allegations against a motion for summary judgment \* \* \* is insufficient'" to defeat a properly supported summary judgment motion. *Jackson v. Alert Fire & Safety Equip., Inc.*, 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1032 (1991), quoting *King v. K.R. Wilson Co.*, 8 Ohio St.3d 9, 10–11, 455 N.E.2d 1282, 1283 (1983). Moreover, "conclusory affidavits that merely provide legal conclusions or unsupported factual assertions are not proper under Civ. R. 56(E)" and are insufficient to establish a genuine issue of material fact. *Moore v. Smith*, 4th Dist. Washington No. 07CA61, 2008-Ohio-7004, 2008 WL 5451340, ¶ 15 (citations omitted); *Wertz v. Cooper*, 4th Dist. Scioto No. 06CA3077, 2006-Ohio-6844, 2006 WL 3759831, ¶ 13, citing and quoting *Evans v. Jay Instrument & Specialty Co.*, 889 F.Supp. 302, 310 (S.D.Ohio 1995) ("'bald

self-serving and conclusory allegations are insufficient to withstand a motion for summary judgment'"); *accord Stetz v. Copley Fairlawn Sch. Dist.*, 2015-Ohio-4358, 46 N.E.3d 165, ¶ 17 (9th Dist.), quoting *Brannon v. Rinzler*, 77 Ohio App.3d 749, 756, 603 N.E.2d 1049 (2d Dist.1991) ("'Statements contained in affidavits must be based on personal knowledge and cannot be legal conclusions.'"); *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 357–358, 609 N.E.2d 216 (6th Dist.1992) (stating that a trial court considering a summary judgment motion is not required to accept conclusory allegations that are devoid of any evidence to create an issue of material fact).

{¶ 41}     Additionally, when trial courts consider summary judgment motions, Civ.R. 56(C) specifies that the court may examine only "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, [that are] timely filed in the action."  Civ.R. 56(C), *Whitt v. Wolfinger*, 2015-Ohio-2726, 39 N.E.3d 809, 813–14, ¶ 12 (4th Dist.); *Davis v. Eachus*, 4th Dist. Pike No. 04CA725, 2004-Ohio-5720, 2004 WL 2406685, ¶ 36; *Wall v. Firelands Radiology, Inc.*, 106 Ohio App.3d 313, 334, 666 N.E.2d 235 (6th Dist.1995). "'Documents which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court.'"  *State ex rel. Shumway v. Ohio State Teachers Retirement Bd.*, 114 Ohio App.3d 280, 287, 683 N.E.2d 70 (1996), quoting *Mitchell v. Ross*, 14 Ohio App.3d 75, 470 N.E.2d 245 (8th Dist.1984). A party may, however, introduce evidentiary material that does not fall within one of the categories of evidence listed in Civ.R. 56(C) when that material is incorporated by

reference in a properly framed affidavit. *Thompson v. Hayes*, 10th Dist. Franklin No. 05AP–476, 2006-Ohio-6000, 2006 WL 3291164, ¶ 103.

**{¶ 42}** According to Civ.R. 56(E), a properly framed affidavit is one that is (1) "based on personal knowledge," (2) "set[s] forth such facts as would be admissible in evidence," and (3) "show[s] affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Additionally, if the affiant refers to documentary evidence, "[s]worn or certified copies of all papers or parts of papers * * * shall be attached to or served with the affidavit." Civ.R. 56(E). "'The requirement of Civ.R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions.'" *Cincinnati Bar Assn. v. Newman*, 124 Ohio St.3d 505, 507, 2010-Ohio-928, 924 N.E.2d 359, 361, ¶ 7, quoting *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981); *see also Bobo* at ¶ 28, citing *Wesley v. Walraven*, 4th Dist. Washington No. 12CA18, 2013-Ohio-473, 2013 WL 544053, ¶ 31 ("Civ.R. 56(E)'s requirement that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit with a statement contained in the affidavit that the copies are true and accurate reproductions.").

**{¶ 43}** Furthermore, affidavits submitted to support or oppose a summary judgment motion must be based on personal knowledge. Civ.R. 56(E); *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 320, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 26, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217,

223, 631 N.E.2d 150 (1994). "'Personal knowledge' is '[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.' Black's Law Dictionary (7th Ed.Rev.1999) 875. *See also* Weissenberger's Ohio Evidence (2002) 213, Section 602.1 ('The subject of a witness's testimony must have been perceived through one or more of the senses of the witness. * * * [A] witness is 'incompetent' to testify to any fact unless he or she possesses firsthand knowledge of that fact.')." *Bonacorsi* at ¶ 26.

**{¶ 44}** We further observe that speculation, innuendo, and supposition are insufficient to create a genuine issue of material fact. *Wheatley v. Marietta College*, 4th Dist. No. 14CA18, 2016-Ohio-949, 48 N.E.3d 587, 329 Ed. Law Rep. 504, 2016 WL 915064, ¶ 112 (citations omitted); *Ohio Bell Tel. Co. v. Columbus*, 10th Dist. Franklin No. 09AP-113, 2009-Ohio-5126, 2009 WL 3090419, ¶ 17.

**{¶ 45}** In the case sub judice, as we explain below, we agree with the trial court that appellant failed to produce evidence to establish a genuine issue of material fact regarding whether appellees are entitled to immunity. Instead, the evidence shows that reasonable minds could only conclude that appellees are entitled to immunity.

2

Immunity

**{¶ 46}** "Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment." *Pelletier* at ¶ 12, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992); *see also Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998

N.E.2d 437, ¶ 17 (noting the importance of deciding a political subdivision's entitlement to immunity before trial).  Hence, appellate courts conduct a de novo review of a trial court's determination regarding political-subdivision immunity.  *Pelletier* at ¶ 13, citing *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.  De novo review means that we afford no deference to the trial court's decision and independently review whether the trial court correctly determined the political subdivision's immunity.

**{¶ 47}**    *Dolan v. Glouster*, 4th Dist. Athens Nos. 11CA18, 12CA1, 11CA19, 12CA6, 11CA33, 2014-Ohio-2017, 2014 WL 1901133, ¶ 106.


C

R.C. CHAPTER 2744

**{¶ 48}**    "R.C. Chapter 2744 sets out circumstances under which political subdivisions and their employees are liable in tort in connection with governmental and proprietary functions." *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 6.  Subject to three exceptions, employees of political subdivisions are immune from liability in a civil action brought "to recover damages for injury, death, or loss to person or property allegedly caused by an act or omission in connection with a governmental or proprietary function."  R.C. 2744.03(A); *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 47.  R.C. 2744.03(A)(6) sets forth a presumption of immunity and states that a political subdivision "employee is immune from liability unless one of the following applies:" (1) "[t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities";

(2) "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;" or (3) "[c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." R.C. 2744.03(A)(6)(a), (b), and (c); *accord Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994); *State ex rel. Deem v. Village of Pomeroy*, 4th Dist. Meigs No. 18CA16, 2018-Ohio-5375, 2018 WL 6928546, ¶ 25; *see Cook v. Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1st Dist. 1995) (stating that political-subdivision-employee immunity analysis "begin[s] with a presumption of immunity"); *accord David v. Matter*, 96 N.E.3d 1012, 2017-Ohio-7351 (6th Dist.), ¶ 11 (explaining that R.C. 2744.03(A)(6) "gives rise to a presumption of immunity"); *Vlcek v. Chodkowski*, 2015-Ohio-1943, 34 N.E.3d 446 (2nd Dist.), ¶ 41 (stating that the "immunity statute creates a presumption of immunity" for political subdivision employees); *MacCabee v. Mollica*, 4th Dist. Athens No. 09CA32, 2010-Ohio-4310, ¶ 16, 2010 WL 3532089 (stating that political subdivision employee presumed immune).

**{¶ 49}** Appellant claims that he produced evidence to demonstrate the existence of a genuine issue of material fact that remains to be determined at trial. Appellant asserts that he offered "evidence in the form of third-party affidavits that Appellees were pursuing [appellant] in a vindictive manner and were 'out to get' [appellant]." Appellant additionally argues that he presented evidence to show that appellees "acted in bad faith in the manner in which the[y] led [appellant] to believe that he would be afforded due process by accepting his permit application on November 9, 2013, while they took measures to execute a warrant and declare the property condemned on

November 6, 2013."

{¶ 50}    Appellees counter that appellant's third-party affidavit contains inadmissible hearsay and is thus insufficient to create a genuine issue of material fact.    Appellees also claim that none of the evidence appellant submitted adequately shows that any of the political subdivision employees acted outside the scope of their employment, with malice, in bad faith, or in a wanton, willful, or reckless manner.

{¶ 51}    In response, appellant contends that the evidence shows, "at a minimum," that appellees acted recklessly "by misinforming and misleading [appellant] in such a manner that resulted in the temporary condemnation of his property and the filing of a criminal complaint against [appellant]."    Appellant asserts that Pierson acted recklessly by failing to advise appellant of Pierson's concerns with the use of the property in a more timely manner.    He also claims that the city prosecutor acted recklessly by filing charges against appellant for violating conditional use and flood plain development restrictions.

{¶ 52}    As we noted earlier, whether a political subdivision or its employee may invoke statutory immunity under R.C. Chapter 2744 generally presents a question of law.  *E.g., Nease v. Med. College Hosp.*, 64 Ohio St.3d 396, 400, 596 N.E.2d 432 (1992), quoting *Roe v. Hamilton Cty. Dept. Of Human Servs.*, 53 Ohio App.3d 120, 126, 560 N.E.2d 238 (1st Dist. 1988) (citations omitted) ("'Whether immunity may be invoked is a purely legal issue, properly determined by the court prior to trial, and preferably on a motion for summary judgment'"); *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992) (same); *accord Williams v. Glouster*, 4th Dist. No. 10CA58, 2012-Ohio-1283, 2012 WL 1029470, ¶ 15; *Long v. Hanging Rock*, 4th Dist. Lawrence No. 09CA30,

2011-Ohio-5137, 2011 WL 4584930, ¶ 17. Whether a political subdivision employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner generally are questions of fact, however. *Cannavino v. Rock Ohio Caesars Cleveland, L.L.C.*, 8th Dist. Cuyahoga No. 103566, 83 N.E.3d 354, 2017-Ohio-380, 2017 WL 444320, ¶ 26; *Long* at ¶ 17, citing *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573; *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d 31. Thus, a trial court may not grant summary judgment on the basis of R.C. 2744.03(A)(6)(b) immunity unless reasonable minds can only conclude that the employee did not act willfully, wantonly, maliciously, reckless, or in bad faith. *Argabrite* at ¶ 15 (stating that summary judgment standard in statutory immunity context requires court to examine whether reasonable minds could conclude that the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner); *Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, 2018 WL 6930502, ¶ 35; *Gates v. Leonbruno*, 70 N.E.3d 1110, 2016-Ohio-5627 (8th Dist.), ¶ 37. If reasonable minds could disagree on these issues, then a court may not grant summary judgment based upon statutory immunity. *Gates* at ¶ 37.

{¶ 53} The standard for showing that a political subdivision employee acted with malicious purpose, in bad faith, or in wanton or reckless manner is "rigorous" and "will in most circumstances be difficult to establish * * *." *Argabrite* at ¶ 8 (citation omitted); *accord Caudill v. Columbus*, 10th Dist. Franklin No. 17AP-129, 2017-Ohio-7617, 2017 WL 4074583, ¶¶ 23–24. Consequently, summary judgment usually is appropriate if the employee's conduct does not, as a matter of law, rise to the

level of maliciousness, bad faith, wantonness, or recklessness. *Caudill* at ¶ 24, citing *Scott v. Kashmiry*, Franklin No. 15AP-139, 2015-Ohio-3902, 42 N.E.3d 339 (10th Dist.), ¶ 20 (where "reasonable minds could only conclude that [an officer's] conduct was, at worst, negligent," then "the issue of immunity is an appropriate issue for resolution on summary judgment"). Accordingly, a court ordinarily may enter summary judgment in favor of a political subdivision and its employee if the employee's actions "showed that [the employee] did not intend to cause harm, * * * did not breach a known duty through an ulterior motive or ill will, did not have a dishonest purpose, and did not create an unnecessary risk of physical harm greater than that necessary to establish negligence." *Hoffman v. Gallia Cty. Sheriff's Office*, 4th Dist. No. 17CA2, 2017-Ohio-9192, 103 N.E.3d 1, 2017 WL 6541029, ¶ 39, quoting *Hackathorn v. Preisse*, 104 Ohio App.3d 768, 772, 663 N.E.2d 384 (9th Dist.1995).

{¶ 54}     In the case at bar, after our review we agree with the trial court's conclusion that appellant has not presented evidence to create a genuine issue of material fact regarding whether appellees' conduct satisfies the rigorous standard necessary to remove their immunity. "Malice" is characterized by "hatred, ill will or a spirit of revenge," or "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 336 (1987). "Bad faith" connotes a "dishonest purpose" or "conscious wrongdoing." *Canfora v. Coiro*, 11th Dist. Lake No. 2006-L-105, 2007-Ohio-2314, ¶ 72.

{¶ 55}     Wanton misconduct means "'the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that

harm will result.'" *Argabrite* at ¶ 8, quoting *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, 2012 WL 6198607, paragraph three of the syllabus; *accord Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367 (1977), syllabus.

**{¶ 56}** "Reckless conduct" is "'characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.'" *Argabrite* at ¶ 8, quoting *Anderson*, paragraph four of the syllabus. "[Recklessness] requires a finding that the probability of harm occurring is great and that the harm will be substantial. A possibility or even probability is not enough as that requirement would place the act in the realm of negligence." *Preston v. Murty*, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174, 1176 (1987). "Recklessness, therefore, necessarily requires something more than mere negligence. In fact, 'the actor must be conscious that his conduct will in all probability result in injury.'" *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 74, quoting *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d 31.

**{¶ 57}** Both standards (wanton) and (reckless) describe conduct that is more than mere negligence. If reasonable minds could only conclude that the employee's conduct demonstrates, at most, negligence, then summary judgment is appropriate. *See Argabrite* at ¶ 34 (Lanzinger, J., concurring) (stating that R.C. 2744.03(A)(6)(b) means that "employees engaged in a governmental function will not be protected if their actions exceed the standard of negligence").

**{¶ 58}** In the case sub judice, after our review we are unable to conclude that appellant produced evidence to create any genuine issues of material fact as to whether appellees'

conduct was more than mere negligence. Appellant did not present any evidence to show that appellees consciously disregarded, or were indifferent, to a known or obvious risk of harm to another that was unreasonable under the circumstances. Here, appellees investigated whether appellant violated building code provisions. Obviously, appellant did not appreciate their efforts. While appellant claims that appellees acted in a vindictive manner, appellant did not produce any proper Civ.R. 56(E) evidence to support his claim. Instead, appellant relies upon a hearsay statement contained in a third-party's affidavit. In that affidavit, the third-party claims that the state building inspector informed her that one of the city employees was "out to get" appellant. This hearsay statement is insufficient to create a genuine issue of material fact. Evid.R. 801(C) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"); *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 23, citing *State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections*, 103 Ohio St.3d 477, 2004-Ohio-5532, 817 N.E.2d 1, ¶ 15 (stating that court need not consider hearsay in resolving summary judgment motions); *Consumer Portfolio Servs., Inc. v. Staples*, 6th Dist. Sandusky No. S-06-031, 2007-Ohio-1531, 2007 WL 949761, ¶ 29 (explaining that affidavit based on hearsay insufficient to create a genuine issue of material fact).

{¶ 59} Moreover, appellant's conclusory allegations, contained in his one-hundred-eighty-paragraph affidavit, likewise are insufficient to create a genuine issue of material fact. The evidence to which appellant attests creates nothing more

than speculation and innuendo that appellees engaged in reckless conduct by investigating whether appellant violated various building codes. Because appellant cannot establish that genuine issues of material fact remain as to whether appellees' conduct rose to the level of recklessness, he cannot establish that genuine issues of material fact remain as to whether appellees' conduct was more than reckless so as to constitute wanton behavior. For similar reasons, he also cannot show that appellees acted with malice or in bad faith.

{¶ 60} Additionally, appellant has not argued on appeal that appellees' conduct fell outside the scope of their employment. Moreover, we observe that the record contains absolutely no evidence to indicate that appellees acted outside the scope of their employment. Consequently, we disagree with appellant that the trial court erred by granting appellees summary judgment on the basis of immunity.

{¶ 61} Appellant also faults the trial court for failing to explain its reasoning for concluding that no genuine issues of material fact remain for resolution at trial. Appellant charges that the trial court instead appeared "wearisome of [appellant]'s inability to express his argument in customary terms." We note, however, that "[a] trial court is not required to issue a written opinion containing findings of fact and conclusions of law when ruling on a motion for summary judgment." *Robson v. Quentin E. Cadd Agency*, 179 Ohio App.3d 298, 2008–Ohio–5909, 901 N.E.2d 835, ¶ 13 (4th Dist.); *accord Dean v. Liberty Mut. Ins.*, 8th Dist. No. 106046, 2018-Ohio-3042, 2018 WL 3689440, ¶ 9; *Natl. Collegiate Student Loan Tr. 2005-3 v. Dunlap*, 2018-Ohio-2701, 115 N.E.3d 689 (4th Dist.), ¶ 46. We therefore disagree with any

suggestion that the trial court erred by failing to provide a detailed rationale for its decision.

**{¶ 62}**     Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellees recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the

time period for further appeal commences from the date of filing with the clerk.