[Cite as *Miller Land Co., Inc. v. McCaleb*, 2020-Ohio-794.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| Miller Land Company, Inc., | : | Case No. 19CA898 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| Walter L. McCaleb, et al., | : | |
| Defendants-Appellees. | : | **RELEASED 2/27/2020** |

_____
<u>APPEARANCES</u>:

Robert Huff Miller, Robert Huff Miller L.L.C., Columbus, Ohio, for appellant.

James L. Mann, Circleville, Ohio, for appellees.
_____

Hess, J.

{¶1}   Miller Land Company, Inc. ("MLC") appeals from a judgment of the Pike County Court of Common Pleas that granted summary judgment in favor of Walter and Ann McCaleb on MLC's prescriptive easement claim.  The McCalebs satisfied their initial burden to demonstrate entitlement to summary judgment, and MLC failed to set forth specific facts to show that a genuine issue of material fact existed for trial.  Accordingly, the trial court properly granted summary judgment to the McCalebs on the prescriptive easement claim, and we affirm its judgment.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   MLC and the McCalebs own adjoining properties in Pike County. It appears that the McCalebs obtained their property in 1999; however, it has been in their family

since at least 1871.  MLC obtained its property in 2000.  A legal description of the MLC property indicated it was landlocked.

{¶3}   According to averments of Mrs. McCaleb, MLC "purchased an easement from Hubert Ingall, so that it could obtain access to its landlocked property to timber it." Ingall lived at the property where the easement was located, but a trust owned the property.  At some point, Tom Smith purchased the property.  In 2016, through counsel, MLC claimed that it and its predecessors had crossed over the property "for decades and decades" and requested that Smith sign an easement agreement to "formalize and document" its rights.  After Smith ignored the request, MLC sought access to the MLC property through the McCaleb property.

{¶4}   In 2017, MLC filed a complaint against the McCalebs alleging they had interfered with its right to use an "Access Road" that crossed the McCaleb property, connected to Buck Hollow Road, and had been used by MLC and its predecessors in interest to access the MLC Property for at least 100 years.  MLC asserted claims for declaratory judgment, quiet title, easement by prescription, easement by necessity, trespass, and tortious interference with a business relationship with a survey crew.

{¶5}   MLC moved for summary judgment on its claims for declaratory judgment, quiet title, and easement by necessity.  The McCalebs filed a memorandum in opposition and moved for summary judgment on all claims.  The McCalebs filed affidavits to support their motion and filed MLC's responses to discovery requests, which they asserted "provided no facts which would refute the information contained in the defendants' affidavits."

**{¶6}**  Relevant here, the McCalebs submitted the affidavit of Bryant Abt, a licensed surveyor, who averred that he conducted a survey of the McCaleb property and "found no evidence of any road or easement on the McCaleb property" or of "any road or easement which extended across the McCaleb property to the adjoining property owned by the Miller Land Company, Inc."  He "found the remnants of a logging road which began and ended on the McCaleb property and which had obviously not been used for some period of time.  The logging road did not extend to the border of the McCaleb property or to any existing County or Township Road."

**{¶7}**  The McCalebs also submitted the affidavit of Mrs. McCaleb who averred that the Access Road "did not cross" the McCaleb property.  She averred that the Access Road was "at one time a private road which in the past was used by persons to travel to the area of the Buck Hollow Community Church; that church had a different name at the time the private road was used."  The Access Road had "not been used by anyone for over 50 years."  The road "no longer exists and only the very end of it at the church is even visible."  In addition, she averred:

> At no time has anyone ever attempted to use a road or pathway of any type to cross our land and thereby gain access to the real property owned by the Miller Land Company Inc.  This is true for a period of time far greater than 21 years, and far greater than 21 years prior to the date the plaintiff filed its complaint.

She averred that MLC's surveyors had tried to survey a logging road created to timber the McCaleb property around 1990-1991, that the logging road was entirely on the McCaleb property, and that it was not used by MLC or its agents to access MLC's property.

{¶8} MLC filed a memorandum in opposition which it supported with the admissions of the McCalebs that the Access Road "was at one time a private road," that "in the past persons used the Access Road to travel from the area of Swift Creek Road and/or Five Bucks Road to the area of the Buck Hollow Community Church," and that "the Access Road historically provided access to and from" the MLC property. MLC also submitted the affidavit of Gerald Wallingford, a civil engineer and licensed surveyor. He averred that the Access Road was "the only access to the MLC Property from a public right-of-way" and was "located on property owned by" the McCalebs. He further averred that the road was "plainly visible where it intersects with Buck Hollow Road at the intersection of Buck Hollow Road and Ervin Hill Road and, while it is not passable due to vegetation and stream erosion, it is plainly visible and can be followed and located as it runs from Buck Hollow Road to the MLC Property, and beyond." Wallingford averred that the Access Road was "different and distinct from the logging road identified * * * on the survey by Mr. Abt" and was "much older than the logging road * * * and dates back over 100 years." In addition, Wallingford averred that the Access Road was depicted on five maps from 1906 to 1957 that were attached to his affidavit. Wallingford averred that the Access Road "was and has been the access to the MLC Property for over one hundred years" and "shows continuous, apparent, permanent and necessary use for access to the MLC Property for over one hundred years."

{¶9} The trial court granted the McCalebs summary judgment on the prescriptive easement claim, explaining:

> * * * [T]here is no evidence in the record showing open, continuous, adverse, and notorious use for over twenty-one years of any of the land now owned by the Defendants.

The assertion in Defendant Ann McCaleb's affidavit that the "access road" referred to in the Plaintiff's complaint did not cross the Defendant's property and the assertion in surveyor Abt's affidavit that he found no evidence of any road or easement which extended across the McCaleb property to the adjoining property owned by the Miller Land Company, Inc. are contradicted, at least in part, by the affidavit of surveyor Wallingford; however, there is no contradiction in the evidence of the assertions by Defendant Ann McCaleb, whose family has owned their land for over 140-years, that the way previously used to travel to the area of the Buck Hollow Community Church has not been used by anyone for over 50-years.

* * * [T]he Court finds that the Defendants have satisfied their burden of showing that there is no genuine issue of material fact that the Defendants' land has not been used by others as an access road openly, continuously, adversely, and notoriously for a period of over twenty-one years, and that the Plaintiff has not set forth specific facts showing that there is a genuine issue for trial concerning whether any portion of the Defendants['] land has been so used."

The court also granted the McCalebs summary judgment on the other claims except the tortious interference claim. The court made an express determination that there was "no just reason for delay." *See* Civ.R. 54(B) ("the court may enter final judgment as to one or more but fewer than all of the claims * * * only upon an express determination that there is no just reason for delay"). MLC then appealed the summary judgment decision.

## II.  ASSIGNMENT OF ERROR

{¶10} MLC assigns one error for our review: "The trial court erred as a matter of law in granting summary judgment in Defendants' favor on the issue of whether an easement by prescription exists."

## III.  STANDARD OF REVIEW

{¶11} "Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56." *Gardner v. Paxton*, 4th Dist. Washington No. 18CA13, 2018-Ohio-4586, ¶ 15. Summary judgment is appropriate if the party who moved for summary judgment "establishes that (1) there is no genuine issue of material fact, (2)

reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made, and (3) the moving party is entitled to judgment as a matter of law." *Id.*, citing Civ.R. 56; *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24. "[A] court that is reviewing a summary judgment motion must construe all reasonable inferences that can be drawn from the evidentiary materials in a light most favorable to the nonmoving party." *National City Real Estate Servs., LLC v. Frazier*, 4th Dist. Ross No. 17CA3585, 2018-Ohio-982, ¶ 25.

**{¶12}** "Under Civ.R. 56, the moving party bears the initial burden to inform the trial court of the basis for the motion and to identify those portions of the record that demonstrate the absence of a material fact." *Graf v. Nelsonville*, 4th Dist. Athens No. 18CA28, 2019-Ohio-2386, ¶ 38. "The moving party cannot discharge its initial burden with a conclusory assertion that the nonmoving party has no evidence to prove its case." *Id.* "[T]he moving party must specifically refer to 'the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action,' that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims." *Barclay Petroleum, Inc. v. Bailey*, 4th Dist. Hocking No. 16CA14, 2017-Ohio-7547, ¶ 16, quoting Civ.R. 56(C). We have previously explained:

> "[U]nless a movant meets its initial burden of establishing that the nonmovant has either a complete lack of evidence or has an insufficient showing of evidence to establish the existence of an essential element of its case upon which the nonmovant will have the burden of proof at trial, a trial court shall not grant summary judgment." *Pennsylvania Lumbermens Ins. Corp. v. Landmark Elec., Inc.* (1996), 110 Ohio App.3d 732, 742, 675 N.E.2d 65. Once the moving party satisfies its burden, the nonmoving party bears a corresponding duty to set forth specific facts showing that there is a genuine issue for trial.

(Alteration sic.)  *Mitchell v. Strong*, 163 Ohio App.3d 638, 2005-Ohio-5354, 839 N.E.2d 965, ¶ 23 (4th Dist.).

## IV.  EASEMENT BY PRESCRIPTION

**{¶13}** " 'Prescription is the acquisition of an easement, over the property of another, through adverse use of that property.' "  *Dunn v. Ransom*, 4th Dist. Pike No. 10CA806, 2011-Ohio-4253, ¶ 76, quoting *Crawford v. Matthews*, 4th Dist. Scioto No. 97CA2555, 1998 WL 720734, *2 (Sept. 21, 1998).  "Prescriptive easements are not favored in law, because they deprive the legal property owner of rights without compensation."  *Fitzpatrick v. Palmer*, 186 Ohio App.3d 80, 2009-Ohio-6008, 926 N.E.2d 651, ¶ 25 (4th Dist.).  "The required elements of a prescriptive easement are similar to those in the law of adverse possession.  The person seeking the easement must demonstrate clear and convincing evidence of open, notorious, adverse, and continuous use of the easement for a 21-year period."  (Citation omitted.)  *Dunn* at ¶ 77.

**{¶14}** " 'Open' and 'notorious' use requires that the actual use be of a character that is capable of giving the legal owner notice."  *Id.* at ¶ 78.  " 'Property is used "openly" when it is used "without attempted concealment," and it is used "notoriously" when its use is "known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises." ' "  *Id.*, quoting *Crawford* at *3, quoting *Hindall v. Martinez*, 69 Ohio App.3d 580, 583, 591 N.E.2d 308 (3d Dist.1990).  "Use of a claimed prescriptive easement is 'adverse' when it is without the permission of, or inconsistent with the rights of the true property owner."  *Id.* at ¶ 91.  Continuous use is "use that is 'neither interrupted by acts of the owner nor abandoned by the adverse user' throughout the 21-year statute of

limitations." *Id.* at ¶ 99, quoting *Crawford* at *3. "The acts of the prescriptive claimant 'do not need to be daily or constant; rather, occasional use that will "fairly indicate an uninterrupted use" to the true owner will suffice.' " *Id.*, quoting Curry & Durham, *Ohio Real Property Law and Practice*, Section 7.02[5], 7-13 (6th Ed.2006). To meet the 21-year requirement a claimant may tack time from when others owned the claimant's property onto the years the claimant personally owned it if the claimant proves that " ' "(a) persons in privity, (b) sequentially and continuously used the disputed property, (c) in the same or similar manner, (d) openly, (e) notoriously, (f) adversely to the title holder's interests, and (g) for at least twenty-one years." ' " *Queen v. Hanna*, 2012-Ohio-6291, 985 N.E.2d 929, ¶ 37 (4th Dist.), quoting *Stillman v. T.W. Grogan Co.*, 8th Dist. Cuyahoga No. 58579, 1991 WL 127265, *1 (June 27, 1991), quoting *J.F. Gioia, Inc. v. Cardinal Am. Corp.*, 23 Ohio App.3d 33, 37, 491 N.E.2d 325 (8th Dist.1985).

## V.  ANALYSIS

{¶15} MLC contends that the McCalebs failed to meet their initial burden to demonstrate entitlement to summary judgment on the prescriptive easement claim. MLC maintains that the admissions that the Access Road was at one time a private road and historically provided access to and from the MLC property "alone create genuine issues of material fact" because they "establish the essential elements of a prescriptive easement benefitting the MLC Property." MLC also asserts that Wallingford's affidavit and the maps incorporated into it "not only create genuine issues of material facts" but "affirmatively establish that the Access Road is an easement by prescription benefitting the MLC Property." MLC argues that "adversity can fairly be inferred." In addition, it argues that there "is abundant evidence that the Access Road existed in at least 1906

and continued through today (and was on maps through 1957) in the same location" and that the McCalebs admitted the Access Road was used by the general public to travel to and from the area. According to MLC, we held that similar evidence established a prescriptive easement in *White v. Emmons*, 4th Dist. Scioto No. 11CA3438, 2012-Ohio-2024. MLC asserts that because an easement was perfected, the "only possible path for success" for the McCalebs is proving the easement was abandoned. However, it asserts that the McCalebs did not argue abandonment, non-use is insufficient to establish abandonment, and no property owner would intentionally landlock its property.

{¶16} The McCalebs met their initial burden to establish entitlement to summary judgment. They supported their motion with affidavit statements that the Access Road did not cross their property, that there was no evidence of a road that extended across their property to the MLC property, and that no one had "ever attempted to use a road or pathway of any type to cross" their land and gain access to the MLC property. This evidence demonstrated there was no genuine issue of material fact that the McCaleb land had not been used openly, notoriously, adversely, or continuously to access the MLC property for a 21-year period.

{¶17} MLC failed to set forth specific facts demonstrating a genuine issue of material fact regarding the existence of a prescriptive easement. MLC submitted evidence to contradict the McCalebs' evidence about the location of the Access Road. However, even if the Access Road crossed the McCaleb property, MLC did not set forth specific facts to show open, notorious, adverse, and continuous use of the Access Road to access the MLC property during the time it owned the property, which was fewer than 21 years. Even if we inferred some past adverse use by prior owners of the MLC

property, MLC identified no evidence showing that use was open, notorious, and continuous for a 21-year period. Such use cannot be reasonably inferred from the mere existence of the road or its appearance on maps.

**{¶18}** The trial court correctly disregarded Wallingford's affidavit testimony that the Access Road "has been the access to the MLC Property for over one hundred years" and "shows continuous, apparent, permanent and necessary use for access to the MLC Property for over one hundred years." Pursuant to Civ.R. 56(E), an affidavit must: (1) "be made on personal knowledge," (2) "set forth such facts as would be admissible in evidence," and (3) "show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." " '[C]onclusory affidavits that merely provide legal conclusions or unsupported factual assertions are not proper under Civ. R. 56(E)' and are insufficient to establish a genuine issue of material fact." *Graf*, 4th Dist. Athens No. 18CA28, 2019-Ohio-2386, ¶ 40, quoting *Moore v. Smith*, 4th Dist. Washington No. 07CA61, 2008-Ohio-7004, ¶ 15 (lead opinion).

**{¶19}** Wallingford's affidavit statements are conclusory. They appear to be based on his findings that the Access Road was the only access to MLC's property "from a public right-of-way," was "plainly visible," and was depicted on maps between 1906 and 1957. These facts do not show that the Access Road provided access to the MLC property for over 100 years or show continuous, apparent, permanent, and necessary use of the Access Road to access the MLC property for over 100 years, particularly given Wallingford's averment that the Access Road was "not passable due to vegetation and stream erosion."

**{¶20}** MLC's reliance on *White* is misplaced. In that case, relevant here, we affirmed the trial court's finding, following a bench trial, of a prescriptive easement in favor of Albert and Joanna Hyland over a strip of land known as "Lute Road." *White*, 4th Dist. Scioto No. 11CA3438, 2012-Ohio-2024, at ¶ 3, 5-6, 10-12. We explained that "abundant evidence * * * revealed that Lute Road existed as early as 1917 and continued in its same location until today. Many witnesses testified that Lute Road existed, and was used, far longer than the period necessary to establish a prescriptive easement." *Id.* at ¶ 10. Specifically:

> David Wilson, a former township trustee, testified that he is sixty three years old and Lute Road had "always been there and it was there before I was even born probably." Seventy eight year old Ray Lute testified that his family moved to the area in 1939 and used Lute Road to access that farm until 1953 when they presumably left the area. Carolyn Hobbs's family bought the Lute property and continued to use Lute Road to access their land during the 1970s, 1980s and 1990s. James McClary confirmed this when he testified that he was "positive" the road was there into the 2000s. Appellee Joanna Hyland affirmed that she and her husband used Lute Road to access their home since their 2008 purchase. She further affirmed that no other access exists to her home.

*Id.* Although not explicitly stated in our decision, Ray Lute and Carolyn Hobbs had lived on the Hyland property. *See White v. Emmons*, Scioto C.P. No. 07-CIH-482 (Feb. 3, 2010).

**{¶21}** Contrary to MLC's contention, *White* did not hold that a prescriptive easement was established based solely on the existence of a private road that was "in use" more than 21 years. Rather, we relied on testimony from individuals who had lived on the Hyland property regarding actual use of the road to access the Hyland property for decades to conclude the elements of a prescriptive easement had been satisfied. *White* at ¶ 10-12. MLC did not submit similar evidence of usage in this case.

**{¶22}** For the foregoing reasons, we overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court



BY: _____
Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**